**John DOE, Plaintiff,**

v.

**A CORP. et al., Defendants.**

**No. 70 Civ. 4812.**

United States District Court,
S. D. New York.

June 7, 1971.

METZNER, District Judge:

The defendants move, *inter alia*, to dismiss the complaint without prejudice to A Corp. and its shareholders and to disqualify plaintiff and his co-counsel from acting as counsel in any related action. The defendants also request an order enjoining plaintiff and his co-counsel from contacting A Corp. shareholders for the purpose of inducing them to commence another action, enjoining plaintiff and his co-counsel from further disclosure of confidential information obtained by plaintiff during his association with the law firm of X, Y and Z (the X firm), and directing that the clerk of the court seal the file in this case.

The corporate defendants in this case are the primary clients of the X firm. These companies are all controlled by the individual defendants, and some of them have their offices in the same building which houses the X firm.

A Corp. is a publicly held corporation. The individual defendants are the controlling shareholders of A Corp., owning

approximately 16% of the company's outstanding common stock.

B Corp. is incorporated under the laws of New York. It is a wholly-owned subsidiary of C Corp. The individual defendants own all the stock of C Corp.

D Corp. is a foreign corporation engaged in business outside the United States. The individual defendants hold approximately 67% of the equity of D Corp.

The remaining defendants include officers, directors and shareholders of these companies.

The complaint charges the defendants with fraud, breach of fiduciary duty, and violations of the federal securities laws.

The plaintiff Doe sues derivatively on behalf of A Corp. and as the representative of the class of holders of A Corp. common stock. Doe is an attorney who was employed by the X firm from April 29, 1968 until July 29, 1969. He was hired by the firm as a tax specialist and during the time of his employment worked closely with all of the corporate defendants and had access to their confidential files.

The association between Doe and the X firm soon proved mutually unsatisfactory, and in early 1969 Doe was informed that his employment was to be terminated. On July 15, 1969, just two weeks before he left the X firm, Doe purchased one share of A Corp. common stock. He concedes that he bought this share of stock with the express purpose of either ousting the current management of A Corp. or initiating a stockholders' derivative suit. Furthermore, Doe does not dispute the defendants' representation that every fact alleged in the complaint and upon which this suit is based was acquired by him while associated with the X firm and engaged in legal work for the defendants as clients of the firm.

The defendants contend that by bringing the present action the plaintiff has violated Canon 4 of the Code of Professional Responsibility of the American Bar Association. This canon provides that "A lawyer should preserve the confidences and secrets of a client." The Disciplinary Rules relating to Canon 4 state in pertinent part:

"DR 4–101 Preservation of Confidences and Secrets of a Client

"(A) 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would likely to be detrimental to the client.

"(B) Except [in situations not relevant here], a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."

The rationale behind this rule is elementary. The client must be secure in his belief that his lawyer will never disclose secrets confided in him. United States v. Standard Oil Co., 136 F.Supp. 345 (S.D.N.Y.1955). The ethical considerations underlying Canon 4 have been summarized by the American Bar Association as follows:

"EC 4–1 Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system

*  *  *.  The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

*     *     *     *     *     *

"EC 4–5  A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes *  *  *.

"EC 4–6  The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment  *  *  *."

■ There can be little doubt that Doe's prosecution of the present suit runs counter to the dictates of Canon 4. The test under the canon is whether in this litigation Doe would be required to do anything which might injuriously affect his former clients in any matter in which he formerly represented them, or whether he would be called upon to use against these former clients any knowledge or information acquired through his former connection with them. Drinker, Legal Ethics 105 (1953).

■ Where "any substantial relationship" can be shown between a lawyer's former representation and subsequent litigation in which the lawyer is involved, his participation in the latter will be prohibited by Canon 4.  T. C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y.1953).  In such a situation the court will assume that during the course of the former representation confidences were disclosed to the attorney which might be revealed in the subsequent suit.  T. C. Theatre Corp. v. Warner Bros. Pictures, *supra*.  A clearer "substantial relationship" than in the present case would be difficult to find.

■ The American Bar Association has consistently held in cases similar to this one that Canon 4 has been violated. Thus, if an attorney believes that executives of a corporate client are engaging in wrongful conduct, he may disclose this to the corporation's board of directors; but he infringes Canon 4 if he himself institutes suit.  ABA Opinion 202 (1940).  In an analogous situation, a lawyer contravenes Canon 4 by participation in an intracorporate struggle for control of a client or by attempting to oust or preserve incumbent management of a client.  ABA Opinion 86 (1932).  It makes no difference that the attorney believes he is acting in the best interests of his client or that the information disclosed is available through nonconfidential sources or was received by the attorney from a third party as well as from the client.  Drinker, *supra* at 135. The determinative factor is that the attorney's action will result in disclosure of communications made in confidence by the client to his lawyer.

Nevertheless, Doe argues that he has not violated Canon 4.  He grounds this contention on the claim that none of the information upon which he relies is privileged pursuant to basic rules of evidence.  This argument misses the point. The attorney-client privilege and the precepts of Canon 4 are not co-extensive. As the American Bar Association says in discussing Canon 4:

"EC 4–4  The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of the information or the fact that others share the knowledge."

■ The evidentiary privilege is based on the confidentiality of communications between lawyer and client and falls away where it can be demonstrated that there was no secrecy involved in the client's disclosures to his attorney.  8 Wigmore, Evidence § 2311 (McNaughton Revision 1961).  The mere presence of a third person defeats the attorney-client privilege.

**1356**

Canon 4, on the other hand, looks beyond technical considerations of secrecy in the evidentiary sense and shields all information given by a client to his attorney whether or not strictly confidential in nature. The sole requirement under Canon 4 is that the attorney receive the communication in his professional capacity.

One final question, however, must be considered. What is the proper course of conduct for an attorney in Doe's position? Accepting the allegations of the complaint as true, as the court must on a motion to dismiss, the defendants were engaged in acts of wrongdoing during the time that Doe was employed by the X firm. Certainly this is a delicate situation and one in which no conscientious attorney would like to be helpless. But the precepts of the Code of Professional Responsibility must always be kept in mind.

Doe's proper course of conduct was to have brought to the attention of the defendants the fact that their conduct was wrongful. Such disclosures are permitted under Canon 4 since they are to the clients themselves and not to third persons. ABA Opinion 202, *supra*. He should have endeavored to persuade his clients to rectify their wrongs. If the clients refused to do so, he should have severed his relations with them. But to attempt to enforce A Corp.'s rights independently in court is a clear violation of the attorney's duty not to disclose confidential information. See ABA Informal Opinion 778 (1964); ABA Opinion 202, *supra*.

The complaint is dismissed without prejudice to A Corp. or its shareholders initiating a similar suit. However, plaintiff and his co-counsel are enjoined from acting as counsel in any action arising out of the same facts upon which the present litigation is based. Plaintiff and his co-counsel are further enjoined from contacting any shareholders of A Corp. for purposes of inducing them to commence or intervene in any such action, and plaintiff and his co-counsel are enjoined from disclosure of secret or confidential information obtained by plaintiff during his employment with the X firm. Finally, the clerk of the court is directed to seal the file of this case.

Settle order.