338 A.2d 584

Morris SLATER

v.

RIMAR, INC. et al.

Supreme Court of Pennsylvania.

Argued Nov. 25, 1974.

Decided April 17, 1975.

Daniel H. Shertzer, Lancaster, for appellant.

Paul R. Rosen, Michael Brodie, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, for appellees.

142

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The proceeding from which this appeal arises commenced as a shareholder's derivative suit in equity brought by the appellant, Morris Slater, against the appellees—Rimar, Inc. [hereinafter "Rimar"] Mt. Joy Millwork, Inc. [hereinafter "Mt. Joy"], and Robert I. Martin in his capacities of president and chairman of the board of Rimar, president of Mt. Joy, and controlling shareholder in both corporations. Before expiration of the time for answering or otherwise responding to appellant's complaint, the appellees filed on January 24, 1973, at the number and term of the equity action, a pleading entitled "Petition allowing a special injunction without a hearing." In this petition it was averred that appellant's lawyer in the suit, Daniel H. Shertzer, Esquire, had at various times served as an officer and director of both Rimar and Mt. Joy and as counsel for all three appellees; that in representing appellant in the instant suit Mr. Shertzer was making use of confidential information which he had acquired by virtue of his positions with the appellees, including his capacity as their lawyer; and that such conduct constituted representation of an interest adverse to that of his former clients, the appellees, in violation of the Canons of Professional Ethics.[1]

1. Rule 205 of the Rules of Civil Procedure, 12 P.S.Appendix, effective March 20, 1939, 332 Pa. xlvi, adopted the Canons of Professional Ethics of the American Bar Association as from time to time existing as the standards of conduct for attorneys of the court. The Canons, which were adopted by the American Bar Association in 1908, were superseded by the Code of Professional Responsibility, 438 Pa. XXV (1970). The Code has been incorporated in full as part of our Rules of Civil Procedure. Pa.R.C.P. 205, as amended February 27, 1974. 455 Pa. ——. Mr. Shertzer's representation of the appellees commenced while the Canons were in force and continued after the Canons were replaced by the Code.

Also on January 24, upon the representation of the defendants that immediate and irreparable harm would otherwise be suffered by them, the trial court entered, *ex parte*, an "order allowing special injunction without hearing." This order, *inter alia*, dismissed appellant's suit without prejudice to the bringing of a similar suit by another shareholder, "disqualified and removed" Mr. Shertzer as counsel in appellant's suit and prohibited Shertzer from representing any interest adverse to that of the appellees and from using or disclosing any information he had acquired while representing the appellees.[2] The order also directed that appellant not disclose to any person any information concerning the defendants which he had acquired from Mr. Shertzer. January 30, 1973 was fixed as the date of hearing to determine whether the "injunction" should be continued.

At the January 30 hearing appellant, through his counsel, submitted an unverified "reply" to appellees' petition, and testimony was taken. At the conclusion of the hearing the appellees' counsel stated that he had "no further evidence to present at any further hearing." Mr. Shertzer, however, responded to an inquiry from the bench with a statement that he "probably would" wish to present additional evidence. In the course of remarks as to the procedure which would be followed, the chancellor stated that "our practice is *to continue or dissolve* a preliminary injunction *until final hearing*. If it was stipulated here that this testimony taken today would be final, then we could place it on our argument list . . . and then write an opinion and dispose of the matter but, in view of the fact that Mr. Shertzer is stating that he may have testimony to take and the further fact that a

2. On January 26 the order was amended to make temporary the disqualification of Mr. Shertzer, but was not changed to make temporary the dismissal of the suit. The temporary aspect of the disqualification was implicitly, although not explicitly, removed by the decree of the court entered January 30, described *infra*, n. 3.

preliminary injunction was granted and continued—is not final until the Court makes it final, the Court is going to make the following order. . . ." (R. 154a–155a). At this point the Court announced that it was continuing the preliminary injunction until final hearing, but then, after an unrecorded discussion with counsel (R. 156a) stated that it was making the injunction permanent.[3] This appeal by Morris Slater followed.[4]

**3.** The decree of January 30, 1973 as it appears in the docket entries, is a certified excerpt from the transcript of the hearing held that day. The operative portion of the order is the final segment of the colloquy which concluded the hearing, as follows:

"THE COURT: After further consideration of the Pleadings and the testimony adduced on the part of the Petitioner and Respondent, the Court orders and directs that the preliminary injunction heretofore granted is permanent in nature.

"MR. SHERTZER: If the Court please—

"THE COURT: You are through and you have an exception. I am granting a permanent injunction at this point. I see no occasion to have any further hearing in this matter.

"MR. SHERTZER: Your Honor, may I get on the record—

"THE COURT: You may get anything you want on the record.

"MR. SHERTZER:—that there were other matters which—that at the hearing I have discovered should have been covered: production of books and Minutes.

"THE COURT: Mr. Shertzer, I listened to you argue for almost an hour, I am through listening.

The injunction is permanent. The bond is released and the Court is making no determination at this time as to what it is going to do about sending the record to Harrisburg. That's it.

"MR. SHERTZER: Is there to be no argument?

"THE COURT: You can take an appeal. I have decided I am going to grant a permanent injunction in this case.

(The proceedings were concluded.)"

R. 161a–162a.

**4.** Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202, 17 P.S. § 211.202 (Supp.1974).

On March 7, 1973, the chancellor purported to enter a final decree upon what was termed the "decree nisi" of January 30. The order of the latter date, however, was not in terms a decree nisi, nor was it part of an adjudication such as is contemplated by the Rules of Civil Procedure. See Pa.R.C.P. 1517. Rather, it granted a permanent injunction and stated there would be no further hearing or argument. It is doubtful, therefore, that there was anything provisional about that order or that exceptions to it were expected to be filed as a prelude to a final decree. The March 7 decree must, therefore, be viewed as supererogatory. This appeal is from the January 30 order.

The appellees filed three motions to quash this appeal on grounds that it was not timely filed and that the appellant had

Appellant contends that the proceedings below failed to comply with the requirements of the Pennsylvania Rules of Civil Procedure, and that he was thereby deprived of procedural due process of law. From our review of the record we agree that the procedure which was followed was irregular and that to the extent that the decree of January 30 purported to grant permanent injunctive relief, it must be vacated. Insofar as it terminated this litigation, however, including the disqualification of counsel, the decree appealed from will be affirmed.

The petition filed by the appellees as defendants in the lower court was in part, although not so titled, a motion to disqualify and remove Mr. Shertzer as counsel for the plaintiff in the case and to dismiss the action because the plaintiff had derived all of the information upon which suit was brought from Shertzer, who had in turn obtained it as attorney for appellees. There is no doubt that under both the Code of Professional Responsibility [hereinafter the "Code"] and its predecessor, the Canons of Professional Ethics [hereinafter the "Canons"] [5] which have the force of statutory rules of conduct for lawyers, see *Schofield Discipline Case*, 362 Pa. 201, 209, 66 A.2d 675 (1949), it is the duty of a lawyer to preserve the confidences of his client and to refrain from representing conflicting interests except by express consent of all concerned, given after full disclosure of the facts. Canon 6 continues: "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subse-

failed to proceed in accordance with the rules of this Court. Those motions were denied by order of this Court entered February 6, 1974. Subsequently, the appellees filed an additional motion to quash and the appellant filed a petition for leave to file a petition to remand. In light of our disposition of this appeal we shall deny both motions.

5. The applicable Canons are Nos. 6 and 37. The corresponding provision of the Code is Canon 4 and the Ethical Considerations and Disciplinary Rules pertaining thereto.

quent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which the confidence has been reposed." See also Code, EC 4–5. This duty to preserve the confidences of a client, moreover continues after the termination of the lawyer's employment. Canon 37 [6]; Code, Canon 4 and especially, EC 4–6 [7]. "[A]n attorney must

**6.** The full text of Canon 37 is as follows:
"37. Confidences of a Client.

It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client.

"If a lawyer is accused by his client, he is not precluded from disclosing the truth in respect to the accusation. The announced intention of a client to commit a crime is not included within the confidences which he is bound to respect. He may properly make such disclosures as may be necessary to prevent the act or protect those against whom it is threatened."

**7.** Canon 4 of the Code provides:
"A Lawyer Should Preserve the Confidences and Secrets of a Client."

Ethical Considerations pertinent to this Canon and which relate most closely to this case are:

"4–1 Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

"4–5 A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent

not accept professional employment against a client or a former client which will, or even *may* require him to use confidential information obtained by the attorney in the course of his professional relations with such client regarding the subject matter of the employment . . ."

of his client after full disclosure, such information for his own purposes. Likewise, a lawyer should be diligent in his efforts to prevent the misuse of such information by his employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another; and no employment should be accepted that might require such disclosure.

"4–6 The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment. Thus a lawyer should not attempt to sell a law practice as a going business because, among other reasons, to do so would involve the disclosure of confidences and secrets. A lawyer should also provide for the protection of the confidences and secrets of his client following the termination of the practice of the lawyer, whether termination is due to death, disability, or retirement. For example, a lawyer might provide for the personal papers of the client to be returned to him and for the papers of the lawyer to be delivered to another lawyer or to be destroyed. In determining the method of disposition, the instructions and wishes of the client should be a dominant consideration."

See also Ethical Considerations 14–20 to Canon 5, pertaining to the representation of the interests of multiple clients.

The Disciplinary Rules applicable to Canon 4 include the following:

"4–101 Preservation of Confidences and Secrets of a Client.

\* \* \* \* \*

"(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."

The Disciplinary Rules are "mandatory in character" and "state the minimum conduct below which no lawyer can fall without being subject to disciplinary action." Preliminary Statement to Code of Professional Responsibility, Pa.R.C.P. 205. See also *Kremer v. Shoyer*, 453 Pa. 22, 33–38, 311 A.2d 600 (1973) (concurring opinion of this writer, joined by Mr. Justice Eagen). By Rule 17–3 of the Rules of Disciplinary Enforcement of this Court, adopted April 27, 1972, 448 Pa. lxv, an attorney's acts or omissions which violate the Code constitute misconduct and grounds for discipline.

American Bar Association, Opinions on Professional Ethics (1967), pp. 434, 435 (Opinion 165). See also *ibid.*, p. 420 (Opinion 150), at p. 633 (Opinion 287).[8] The rationale of the rule of confidentiality as between a lawyer and his client is well put by Mecham in his work on Agency as follows:

> "The purposes and necessities of the relation between a client and his attorney require, in many cases, on the part of the client, the fullest and freest disclosures to the attorney of the client's objects, motives and acts. This disclosure is made in the strictest confidence, relying upon the attorney's honor and fidelity. To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance. Based upon considerations of public policy, therefore, the law wisely declares that all confidential communications and disclosures, made by a client to his legal adviser for the purpose of obtaining his professional aid or advice, shall be strictly privileged;—that the attorney shall not be permitted, without the consent of his client,—and much less will he be compelled—to reveal or disclose communications made to him under such circumstances." 2 Mecham on Agency, 2d Ed., § 2297.

 While the breach by a lawyer of his duty to keep the confidences of his client and to avoid representing conflicting interests may be the subject of appropriate disciplinary action,[9] a court is not bound to await

8. As to attorney-client privilege in general, see VIII J. Wigmore, Evidence, (the McNaughton Rev., 1961), Chapter 82, especially Section 2292.

9. The trial court in the case at bar stated (R 156a) that it would later consider referring the record indicating professional misconduct in the present case "to the appropriate authorities in Harrisburg," presumably meaning the Disciplinary Board of this Court. *See* Rules of Disciplinary Enforcement, Rule 17 of the Rules of

such development before acting to restrain improper conduct where it is disclosed in a case pending in that court. A trial judge, in the exercise of his inherent power to control litigation over which he is presiding and his duty to supervise the conduct of lawyers practicing before him so as to prevent gross impropriety, has power to act where the facts warrant it.[10] This supervisory power is analogous to a judge's power to hold in contempt of court a lawyer guilty of contumacious conduct in the trial of a case.[11] Where a breach of ethics is made to appear, the relief is usually the granting of a motion to disqualify and remove the offending lawyer, and has been employed in this State as well as other jurisdictions. See *Middleburg v. Middleburg*, 427 Pa. 114, 233 A.2d 889 (1967); *Seifert v. Dumatic Industries, Inc.*, 413 Pa. 395, 197 A.2d 454 (1964).[12]

■ Although disqualification and removal is appropriate in cases in which representation of conflicting interests is shown, it is, of course, a serious remedy which

the Supreme Court of Pennsylvania, adopted March 21, 1972, effective July 1, 1972, 446 Pa. xxiii (1972). (The effective date was later extended to November 1, 1972).

10. As the Court of Appeals for the Second Circuit observed in *General Motors Corp. v. City of New York*, 501 F.2d 639 (1974), so here, "[t]he Court's inherent power to insure compliance with these prophylactic rules of ethical conduct has not been questioned at any stage of these proceedings." 501 F.2d at 643, n. 11.

11. "Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is inherent in all courts. When it is committed in its presence the court may, in punishing the offender, act of its own knowledge without further process, proof, or examination." *Levine Contempt Case* 372 Pa. 612, 618, 95 A.2d 222, 225 (1953).

12. Judicially imposed restraint on the lawyer whose conduct offends former Canon 6 is generally recognized as a necessary and proper sanction. See *General Motors Corp. v. City of New York*, 501 F.2d 639, 648–52 (2d Cir. 1974); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973); *Doe v. A. Corp.*, 330 F. Supp. 1352 (S.D.N.Y.1971), affirmed sub nom., *Hall v. A. Corp.*, 453 F.2d 1375 (2d Cir. 1972); *E. F. Hutton and Co. v. Brown*, 305 F.Supp. 371, 376 (S.D.Tex.1969). *See generally* 7 Am.Jur.2d, § 159 at 141; Annotation, 52 A.L.R.2d 1243, §§ 14, 15, 16 (1957).

must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice. This concern has been well put by the United States Court of Appeals for the Second Circuit in a similar case:

"We approach our task as a reviewing court in this case conscious of our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility. This balance is essential if the public's trust in the integrity of the Bar is to be preserved." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973).

The remedy may also necessarily include dismissal of the action in which the unlawful conflict of interest is revealed. This sanction is peculiarly appropriate where the information on which the suit is bottomed has been supplied altogether by the former lawyer for the defendant, now counsel for the plaintiff. See *Doe v. A. Corp.*, 330 F.Supp. 1352 (S.D.N.Y.1971); *Richardson v. Hamilton International et al.*, 333 F.Supp. 1049 (E.D. Pa.1971), aff'd. 469 F.2d 1382 (3rd Cir. 1972).[13]

In the case at bar, the petition of appellees, together with the supporting affidavit of appellee Robert I. Martin and the deposition of appellant, Slater (which had been taken by appellees on January 3, 1973) prima facie warranted removal of Mr. Shertzer as counsel for Slater and dismissal of Slater's suit.[14] The further evidence

13. Similarly, where a lawyer's improper conduct in representing an interest adverse to that of a former client is shown, "a judgment in favor of the subsequent client will be reversed if the trial court's failure to restrain the attorney amounts to prejudicial error." Annotation, 52 A.L.R.2d § 17 at 1243. Cf. *Jedwabny v. Philadelphia Transportation Co. et al.*, 390 Pa. 231, 135 A.2d 252 (1957).

14. We express no opinion as to whether there was justification for the extraordinary action of the trial court in entering an or-

adduced at the hearing confirmed that such relief was appropriate. The complaint had averred that Slater is the owner of 200 shares of the five-cent par value capital stock of Rimar. The gravamen of Slater's complaint was that on March 13, 1972, Rimar and Mt. Joy entered into an agreement under the terms of which Mt. Joy was to sell to Rimar 23,406 shares of Rimar's stock in consideration of the cancellation by Rimar of a debt in the amount of $140,389.58 owed to it by Mt. Joy. It was averred that on and before the date of this agreement Rimar had an option to purchase 100,000 shares of Rimar common stock at a price of $1 per share. The complaint concluded from these facts that the March 13 agreement constituted a fraud upon the shareholders of Rimar to the extent of $116,983.

The deposition of Slater established that it was from Mr. Shertzer that he learned of Mt. Joy's status as the principal shareholder in Rimar, of Rimar's option to purchase its own shares from Mt. Joy, of the stock purchase agreement between Rimar and Mt. Joy, and of the loan transaction between Rimar and Dominion.

The evidence introduced by the appellees at the January 30 hearing established not only that Mr. Shertzer's representation of the appellees continued until approximately the time of the March 13, 1972 agreement, but also that the stock option agreement between Rimar and Mt. Joy, referred to above, was tied closely to a prior loan transaction between Rimar and Dominion Investor's Corp. and that Mr. Shertzer had represented Rimar in the negotiation and drafting of the documents pertaining to that loan transaction. Mr. Shertzer did not testify at the hearing of January 30.

der on January 24, 1973 granting this and other relief without notice or hearing. A hearing was in fact scheduled and held six days later, on January 30, 1973. Cf. Pa.R.C.P. 1531(d), which provides that an injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within 5 days after the granting of the *ex parte* injunction.

152

From this evidence we conclude that the chancellor was correct in those portions of his decree which disqualified and removed Shertzer and which dismissed the action without prejudice to another shareholder to bring a new or similar suit.[15]

The petition of appellees, however, did not stop with disqualification of the plaintiff's attorney and dismissal of the suit, but sought as well on-going injunctive relief against both the attorney and his client, the appellant. The chancellor granted relief in the form requested. Thus Slater was barred not only from suing defendants on the matters set forth in the complaint, but also from bringing any suit against appellees "based upon any information received by [Shertzer], which information may be substantially related to any matters passed upon during Shertzer's representation of the defendants or any one of them." (¶ 4 of the decree, R. at 2b). Slater was barred, additionally, from disclosing to any other person any information received from Shertzer "in connection with any matter related directly or indirectly to the complaint," or "related directly or indirectly to any matter involving any of the defendants." (¶ 7 of the decree, R. at 2b). Shertzer, in turn, was directed (1) not to disclose to any other person "any information concerning the complaint [or] relating to any matter or thing involving any of the defendants," (2) to return to the defendants, without making any copies, all files, pleadings, documents, etc. and "every piece of paper" relating to the defendants, (3) to return all shareholder lists of Mt. Joy and Rimar and (4) not to solicit the institution of any suits against the defendants, nor to contact or discuss with any shareholder of Mt. Joy or Rimar

15. The decree of the trial court was undoubtedly final, since it dismissed the action. Cf. *Middleburg v. Middleburg*, 427 Pa. 117, 233 A.2d 889 (1967) where we quashed an appeal because the order appealed from, the disqualification of plaintiff's attorney, was interlocutory as to the client.

"any matter involving any of the defendants relating to matters passed upon during his representation of the defendants or any one of them." (¶¶ 7, 8, 9 of the decree, R. 26, 36.) Finally, Shertzer was ordered to show cause why disciplinary proceedings should not be recommended by the court against him. (¶ 10 of the decree, R. 3b).

It is obvious that this relief went far beyond the necessities of the case before the chancellor. It may have been properly sought, as to Slater, in a cross-action for an injunction, or as to Shertzer by means of an independent bill in equity, but we know of no authority for, in effect, bringing one such action within the framework of another. This throws orderly procedure to the winds.[16] Moreover, the only notice to Slater after the *ex parte* injunctive decree of January 24 was that a hearing would be held on January 30 on the petition "to continue the injunction"; there was no notice that this was to be a hearing on a final, permanent injunction, and neither Slater nor Shertzer had opportunity to be heard, on the question of permanent relief. The record is clear that the chancellor himself considered until the very end of the session that the purpose of the hearing was to determine whether or not to continue the *ex parte* decree as a preliminary injunction.[17] Furthermore, if the injunction

16. Appellees in their brief (page 23) state that the decree prayed for and entered herein was based upon that entered by the federal district court in *Doe v. A. Corp.*, 330 F.Supp. 1352 (D.C., S.D. N.Y.1971). We do not consider that case as being authority for the proper scope of relief in the case at bar. Apart from the differences in civil procedural rules applicable to the conduct of cases in the federal courts and Pennsylvania courts, the plaintiff in *Doe* had himself been a lawyer for the defendant corporation.

17. The chancellor stated as follows (R. 154a–155a): " . . . in view of the fact that Mr. Shertzer is stating that he may have testimony to take and the further fact that a preliminary injunction was granted and continued—is not final until the court makes it final, the court is going to make the following order:
 "In accordance with Rule 1531 of the Pennsylvania Rules of Civil Procedure, Subsection (3)[(e)] . . . the Court, after

154

was to be made permanent, the court should have made an adjudication in compliance with Pa.R.C.P. 1517, thus affording appellant the opportunity to file exceptions to a decree nisi. Pa.R.C.P. 1518. The disposition which the chancellor here made deprived him of that opportunity. See and compare *Patrick & Wilkins Co. v. Adams*, 456 Pa. 566, 322 A.2d 341 (1974).

While we are satisfied that the portions of the decree granting permanent injunctive relief (i. e., all of the decree except paragraphs 1 and 3) were both beyond the proper scope of the suit before the Court and also were lacking in procedural due process, we are aware that (except for paragraphs 1 and 3) only paragraphs 4 and 7 of the decree relate directly to appellant; the others (paragraphs 2, 6, 8, 9 and 10) relate primarily to attorney Shertzer, who has not appealed. As to the latter paragraphs, appellant has no appealable interest and therefore they are not properly before us; accordingly, we make no order concerning them.

Paragraphs 1 and 3 of the decree are affirmed; paragraphs 4 and 7 of the decree are vacated. In light of this appeal, we consider that paragraph 5 of the decree, directing the record in this case to be impounded by the prothonotary of the court of common pleas, has been rendered moot, and we therefore also vacate that paragraph.

Appellant and appellees each to bear own costs.

NIX and MANDERINO, JJ., concur in the result.

EAGEN, J., did not participate in the consideration or decision of this case.

a preliminary hearing finds that there has been a sufficient preponderance of the evidence to justify the granting of the preliminary injunction and the continuance of the preliminary injunction until final hearing."