# Albert M. Greenfield & Co. Inc. v. Alderman

*Michael S. Silberman,* for plaintiff.
*William T. Hangley,* for defendant.

HERRON, *J.,* May 14, 2001—Defendants, Mark L. Alderman, Esquire, Robert C. Jacobs, Esquire, and Wolf, Block, Shorr & Solis-Cohen, LLP, have filed a motion to disqualify Michael S. Silberman, Esquire and his law firm, Silberman & DiFilippo P.C., as counsel for plaintiff, Albert M. Greenfield & Co. Inc. This motion is the latest maneuver in the underlying and complicated litigation, involving allegations of legal malpractice lodged against defendants on account of the unsuccessful purchase and development by plaintiff of three real estate properties from third-party owners. These properties are the Federation Building, the Packard Building and the 1600 Arch Street Building. The present motion concerns 1600 Arch Street and separate lawsuit(s) involving this property, as well as the ultimate settlement reached in those suit(s).

Since it does not appear at this time that Silberman's representation of Greenfield gives rise to such a direct conflict of interest so as to negate Greenfield's choice of counsel, and since Silberman may represent Greenfield in pre-trial matters, the court is denying the motion.

## BACKGROUND

This memorandum opinion will focus only on those facts concerning the transaction involving 1600 Arch Street, which are at issue in the present motion.[1]

In 1997, Greenfield was the exclusive commercial leasing representative for Quinnco 1600 Arch Street, LLC, who was the owner of the building located at 1600 Arch Street.[2] Quinnco had been a client of Wolf Block on various legal matters.[3] SunAmerica Housing Fund, 431, a Nevada Limited Partnership and affiliate of SunAmerica Affordable Housing Partners allegedly held at least a 50 percent partnership interest in Quinnco.[4]

Initially, Wolf Block had represented Quinnco before Wolf Block became interested in leasing office space in 1600 Arch Street.[5] In pursuit of this interest, by letter dated April 3, 1997, Jeffrey B. Rotwitt, Esq. of Obermeyer, Redmann, Maxwell & Hippell, acting as Wolf Block's exclusive tenant representative, wrote to Greenfield, in its capacity as Quinnco's leasing representative, and requested a proposal "to lease space" in 1600 Arch Street on behalf of Wolf Block.[6] On account of the apparent conflict resulting from Wolf Block's representation of Quinnco, Quinnco retained Blank Rome Comisky & McCauley, LLP for the limited pur-

1. The facts presented in this section are those gleaned from the relevant pleadings, transcripts and memoranda of the parties. The parties disagree on many of the facts and this opinion merely recites them for purposes of background and for disposing of the present motion.

2. Transcript of December 15, 2000 at 57; pl. mem. of law in opposition to defs. motion to disqualify, at 7.

3. TR at 58, 62; pl. mem. of law, at 7.

4. Compl. at ¶52.

5. TR at 57-58, 62.

6. Pl. mem. of law, at 8.

pose of representing Quinnco in the lease negotiations.[7] In October, 1997, Quinnco and Wolf Block purportedly reached a binding letter of intent for Wolf Block to lease office space in 1600 Arch Street (the lease deal).[8] The lease deal broke down because of Quinnco's purported breach.[9] As a result, Greenfield and Wolf Block initiated separate lawsuits against Quinnco, both of which eventually settled.[10] Specifically, Greenfield sought payment of the leasing commission of more that $1,200,000, which it allegedly earned from the lease deal and Greenfield also filed a broker's lien against Quinnco in this amount.[11] Wolf Block, in its lawsuit against Quinnco, sought compensatory damages, costs, attorneys' fees and other relief.[12]

Wolf Block's case against Quinnco settled first and Wolf Block received $250,000.[13] However, Greenfield's suit against Quinnco continued. Plaintiff's counsel here, Silberman was also Greenfield's attorney in the Greenfield/Quinnco litigation, wherein Greenfield sought payment of the leasing commission.[14] F. Warren

---

7. TR at 58, 62; pl. mem. of law, at 8.

8. Pl. mem. of law, at 8.

9. TR at 58, 62; pl. mem. of law, at 8.

10. The captions of these respective lawsuits are *Albert M. Greenfield & Co. v. Quinnco—1600 Arch Street,* C.P. Phila. April term 1998, no. 3219 (Greenfield/Quinnco litigation); and *Abrahams v. Quinnco—1600 Arch Street,* May term 1998, no. 648 (Wolf Block litigation).

11. Compl. at ¶51; pl. mem. of law, at 9.

12. *Id.*

13. TR at 60; pl. mem. of law, at 9.

14. Compl. and answer, at ¶53; TR at 63. According to Greenfield, partners of Wolf Block (including Alderman) were material witnesses in the Greenfield/Quinnco litigation. *Id.* Both parties admit that Wolf Block did not represent Greenfield in that litigation. *Id.*

Jacoby, Esq. of Cozen & O'Connor represented Quinnco in that litigation.[15] On June 17, 1999, a settlement discussion allegedly occurred between Michael F. P. Maloney, the representative of Quinnco's general partner, and Albert M. Greenfield III of Greenfield, wherein Maloney purportedly stated that the Greenfield/ Quinnco litigation might be settled if Greenfield made an offer to buy the 1600 Arch Street Building for $8,500,000.[16]

Between June 17, 1999 and July 22, 1999, Mr. Greenfield and Jacobs of Wolf Block had a series of telephone discussions and meetings to determine the economic feasibility of buying the 1600 Arch Street Building from Quinnco for $8,500,000 and, thereafter, convert it from an office building into apartments using historic tax credits.[17] Plaintiff alleges that such a conversion of 1600 Arch Street would be modeled after the "Pennsylvania House Project" in which Wolf Block had represented Greenfield in connection with the conversion from an office building into apartments of the former "Pennsylvania Building" located at 1500 Chestnut Street, Philadelphia Pennsylvania, known as "The Pennsylvania House."[18] Then, on July 22, 1999, Mr. Greenfield sent a letter to Maloney, extending its offer to buy the 1600 Arch Street Building for $8,500,000.[19] Jacobs of Wolf Block allegedly helped Greenfield prepare this letter, but defendants deny this allegation.[20]

15. TR at 64.
16. TR at 64-65; compl. at ¶55.
17. Compl. and answer at ¶56.
18. Compl. and answer at ¶6.
19. Compl. at ¶59. See Compl., exhibit N.
20. Compl. and answer at ¶59.

On September 2, 1999, Mr. Greenfield sent a letter to Michael L. Fowler, president of SunAmerica, which referred to its offer to buy the 1600 Arch Street Building, along with copies to Dan Keating of Keating Builder Corp. and copies to Alderman and Jacobs of Wolf Block.[21] This letter was sent allegedly at the behest of Jacobs during a telephone conversation with Mr. Greenfield, wherein Jacobs allegedly indicated that Alderman wanted Greenfield to send this letter and purportedly explained that it should also be sent to Keating.[22] Keating, is an existing client of Wolf Block, who is the "contractor" on the conversion of the 1600 Arch Street Building and is or was in the process of becoming an equity participant in the 1600 Arch Street Building along with Quinnco.[23] Jacobs allegedly told Mr. Greenfield that Keating was anxious to "get going" with the conversion; that Keating could help mediate a settlement of the Greenfield/Quinnco litigation; and that he would be willing to be Greenfield's "contractor" for the building if Greenfield was successful in buying it from Quinnco.[24] Defendants deny that Jacobs made any such statements to Mr. Greenfield.[25]

Thereafter, on October 13, 1999, Jacobs did telephone Mr. Greenfield and stated that Alderman wanted to arrange a meeting to be held on October 14, 1999 at Wolf Block's offices among Mr. Greenfield, Alderman, Jacobs and Keating with the purported purpose of mediating a settlement of the Greenfield/Quinnco litiga-

21. Compl. and answer at ¶62. See compl., exhibit O.
22. Compl. and answer at ¶¶60-61.
23. TR at 59, 68-69.
24. Compl. at ¶61.
25. Answer at ¶¶60-61.

tion.[26] On that same date, Mr. Greenfield wrote Keating, and included a copy of a letter to F. Warren Jacoby from Silberman, relating to a proposed settlement of the Greenfield/Quinnco litigation.[27] Greenfield also wrote to Michael F. Fowler of SunAmerica and indicated that "this litigation ought to be settled in the manner set forth in my lawyer's [Silberman's] letter or, alternatively, I am willing to settle by purchasing the building for $8,000,000."[28]

The October 14, 1999 meeting did take place and was attended by Mr. Greenfield, Alderman, Jacobs and Norman M. Goldberger, Esq. of Wolf Block, as well as Keating.[29] Silberman was not present at this meeting even though he did represent Greenfield in the litigation.[30] At the meeting, Alderman, who defendants describe as a "disinterested mediator,"[31] recommended to Mr. Greenfield that he accept an offer by Quinnco (allegedly transmitted by Keating) of $250,000 to settle the Greenfield/Quinnco litigation.[32] Alderman also purportedly told Greenfield that Quinnco was not interested in selling him the 1600 Arch Street Building.[33]

---

26. Compl. and answer at ¶63. Both parties disagree as to whether Alderman requested the meeting or if Greenfield requested the meeting and on what date Jacobs telephoned Mr. Greenfield (see *id;* TR at 59), but this disagreement need not be resolved in order to rule on the present motion.

27. Compl. and answer at ¶64. See compl., exhibit P.

28. Compl. at ¶65. See compl., exhibit Q.

29. Compl. and answer at ¶66.

30. TR at 71. See also, defs. mem. of law in support of their motion to disqualify plaintiff's counsel, at 5.

31. Answer at ¶67.

32. Compl. and answer at ¶67; TR at 60, 70.

33. Compl. and answer at ¶67; TR at 70.

Plaintiff alleges that Alderman pressured Mr. Green-field by opining in a "menacing tone" (i) that Green-field's claims were not worth more than $250,000; (ii) that Wolf Block had settled its own claims for $250,000 and (iii) that Greenfield's lawyer (in the Greenfield/Quinnco litigation) was an "idiot" and that Mr. Greenfield should listen to Alderman who was really Greenfield's lawyer and was looking out for Greenfield's best interests.[34] Defendants admit that Alderman expressed his opinion that Greenfield's claims were not worth more than $250,000, the same amount which Wolf Block had settled its claims, and that he believed it was in Greenfield's best interest to settle for that amount.[35] However, defendants deny that Alderman said anything in a "menacing tone" or said that Greenfield's lawyer in the Greenfield/Quinnco litigation was an "idiot" or that he, Alderman, was Greenfield's lawyer and was looking out for Greenfield's best interests.[36] Mr. Greenfield allegedly responded that he did not care what Alderman thought and the two purportedly "squared off" and almost came to blows.[37] The meeting did continue and the Greenfield/Quinnco litigation was tentatively settled for $525,000, contingent on SunAmerica's approval, and was later reduced to $515,000.[38] Ironically, the letter of October 13, 1999 from Silberman to F. Warren Jacoby did propose that "Quinnco/SunAmerica consider

---

34. Compl. at ¶68; TR at 70.
35. Answer at ¶68.
36. *Id.*
37. Compl. and answer at ¶69.
38. *Id.*

a settlement in the amount proposed herein, namely $525,000."[39]

In the present action, Greenfield alleges that Wolf Block and, in particular, Alderman purported to act as Greenfield's legal representative at the October 14, 1999 meeting, and that Jacobs and/or Alderman failed to disclose the true nature of Keating's interest in becoming an equity partner in Quinnco and that they really represented Keating's interests in the settlement of the Greenfield/Quinnco litigation.[40] The gravamen of its complaint against Wolf Block, in connection with the 1600 Arch Street Building, is that Wolf Block imposed the "cash" settlement with Quinnco upon Greenfield and thwarted Greenfield's ability to acquire the building as part of its settlement by mooting the "buy/sell" alternative. As such, Greenfield's complaint sets forth counts for breach of fiduciary duty, legal malpractice, intentional interference with prospective contractual relations, fraudulent misrepresentation and non-disclosure, and breach of contract.

Defendants deny that they were Greenfield's legal representative during the 1600 Arch Street transaction (or the other 2 unsuccessful transactions); they deny that Alderman or Wolf Block represented Keating during the settlement of the Greenfield/Quinnco litigation; and they deny that they failed to disclose to Greenfield that Keating was about to obtain an equity interest in the 1600 Arch Street Building.[41] However, defendants do admit that Wolf Block had connections to all of the

---

39. Compl., exhibit P. The same letter is attached at exhibit A to defs. mem. of law in support of their motion to disqualify.

40. Compl. at ¶¶74-75.

41. Answer at ¶¶74-75.

participants in the 1600 Arch Street transaction.[42] Specifically, defendants do admit that Wolf Block had both represented Greenfield and been across the table from Greenfield; that Wolf Block had both represented and litigated against Quinnco and SunAmerica; that Wolf Block hoped to be engaged to represent the 1600 Arch Street venture as the project proceeded; and that Wolf Block had an attorney-client relationship with Keating.[43]

Clearly, many facts remain in dispute. However, this court need not decide these facts in order to resolve the present motion to disqualify plaintiff's counsel. Rather, this court's inquiry is limited to whether Silberman and his law firm are conflicted by their own interests or whether Silberman is a necessary witness in this matter who must be disqualified at this point in the litigation.

## DISCUSSION

In their motion to disqualify Silberman and his law firm as counsel for plaintiff, defendants assert two grounds: (1) that Silberman's representation of Greenfield would be violative of Rule 1.7(b) of the Pennsylvania Rules of Professional Conduct since Silberman's representation of Greenfield is materially limited in protecting his own interests since he was involved in the Quinnco settlement and may himself be liable for malpractice; and (2) that Silberman is precluded under Rule 3.7 of the Pennsylvania Rules of Professional Conduct from representing Greenfield since Silberman is a necessary witness at trial as his participation and

---

42. Defs. mem. of law, at 4.
43. *Id.* at 4-5.

advice to Greenfield in the Quinnco settlement will be crucial to Wolf Block's defense.

Contrary to defendants' position, this court finds no compelling reason at this juncture in the litigation to disqualify Silberman or his law firm based on a conflict of interest. Additionally, even if Silberman may likely be shown to be a necessary and material witness, whose testimony cannot be obtained elsewhere, Silberman may still act as Greenfield's attorney in pre-trial matters. Therefore, Greenfield should not now be denied his choice of counsel.

## I. *Standard for Reviewing Motion To Disqualify Counsel*

Our Supreme Court has repeatedly stated that "[t]he trial court in the first instance has the power to regulate the conduct of attorneys practicing before it, and has the duty to insure that those attorneys act in accordance with the Code of Professional Responsibility." *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 183, 389 A.2d 568, 571 (1978). See also, *Slater v. Rimar Inc.,* 462 Pa. 138, 150, 338 A.2d 584, 589 (1975); *Seifert v. Dumatic Industries Inc.,* 413 Pa. 395, 397, 197 A.2d 454, 455 (1964); *Estate of Younger,* 314 Pa. Super. 480, 492, 461 A.2d 259, 264 (1983). Currently, "[a]n attorney's conduct concerning the representation of his client is governed by the Pennsylvania Rules of Professional Conduct." *In re Birmingham Twp., Delaware County,* 142 Pa. Commw. 317, 322, 597 A.2d 253, 255 (1991). "A court may restrain conduct which it feels may develop into a breach of ethics; it 'is not bound to sit back and wait for a probability to ripen into a certainty.' " *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 255, 602 A.2d 1277,

1284 (1992) (quoting *United States v. RMI Co.,* 467 F. Supp. 915, 923 (W.D. Pa. 1979).

The common law holds that an attorney owes a fiduciary duty to his client which demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest. *Maritrans,* 529 Pa. at 253, 602 A.2d at 1283. An attorney may not represent conflicting interests, unless those interests agree to be so represented. *Seifert,* 413 Pa. at 397, 197 A.2d at 455. See also, *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48-49, 176 A.2d 641, 643 (1962). "The test of whether an attorney has a conflicting interest so as to preclude his representation of a party is not the actuality of conflict, but the possibility that a conflict may arise." *Middleberg v. Middleberg,* 427 Pa. 114, 115, 233 A.2d 889, 890 (1967) (quoted in *Estate of Pew,* 440 Pa. Super. 195, 243, 655 A.2d 521, 545 (1994)).

Granting a motion to disqualify and removing the offending lawyer is the usual remedy employed when a breach of ethics is made to appear. *Slater,* 462 Pa. at 149, 338 A.2d at 589. In the same instance, disqualification is "a serious remedy which must be imposed with an awareness of the interests of a client in representation by counsel of the client's choice." *Id.* at 149-50, 338 A.2d at 590. Accord *McCarthy v. SEPTA,* 2001 WL 347147 at *3 (Pa. Super. Apr. 10, 2001). See also, *George v. Wausau Insurance Co.,* 2000 WL 276915 at *1 (E.D. Pa. Mar. 13, 2000) (noting that motions to disqualify are not favored since a party's choice of counsel is entitled to substantial deference) (citing *Hamilton v. Merrill Lynch,* 645 F. Supp. 60, 61 (E.D. Pa. 1986).[44]

---

44. The United States District Court for the Eastern District of Pennsylvania has incorporated the rules of professional conduct adopted by the Pennsylvania Supreme Court. See *George,* 2000 WL 276915 at

Further, violation of the ethical rules does not necessarily provide grounds for disqualification. See *Maritrans,* 529 Pa. at 256, 602 A.2d at 1284. Rather, a court may disqualify counsel if it is necessary "to ensure the parties receive the fair trial which due process requires." *McCarthy,* 2001 WL 347147 at *3 (quoting *In re Estate of Pedrick,* 505 Pa. 530, 542, 482 A.2d 215, 221 (1984)). In addition, the court should prevent litigants from using motion to disqualify opposing counsel for tactical purposes. *Hamilton,* 645 F. Supp. at 61.

Applying this standard to the present case, this court does not now find that Silberman must be disqualified from representing Greenfield or that defendants will be deprived their due process rights if Silberman is allowed to continue representing Greenfield.

## II. *Silberman's Representation of Greenfield Does Not Appear To Be Materially Limited by His Own Interests Because of His Participation in the Settlement of the Greenfield/Quinnco Litigation*

Defendants argue that Silberman's involvement in the Greenfield/Quinnco litigation gives rise to serious questions concerning his professional propriety in that transaction and that "no reasonable attorney could believe that his representation of Greenfield would not be adversely affected." Defs. mem. of law, at 12. Specifically, defendants contend that Silberman was responsible for the "purportedly less favored" money settlement alternative in that litigation, while Wolf Block was

---

*1 (citing U.S.D.C., E.D. Pa., Local R.C.P. 14(IV)(B)). Currently, this rule is cited as U.S.D.C., E.D. Pa., Local R.C.P. 83.6(IV)(B). Therefore, district court opinions dealing with motions to disqualify opposing counsel are valid as persuasive authority.

purportedly responsible for the favored "buy/sell" settlement alternative which, thus, gives rise to various questions regarding Silberman's knowledge and participation in the ultimate settlement which resulted. Defs. reply br., at 1-3.

In response, plaintiff asserts that defendants' motion is merely brought for tactical purposes since "Silberman did not participate in and does not (and could not) have any firsthand knowledge of the events giving rise to Greenfield's claim against defendants involving 1600 Arch Street." Pl. mem. of law, at 18-19. Plaintiff also argues that "Silberman was undeniably 'out of the loop' and could not have been (as defendants claim) immersed in . . . the settlement discussions relating to Greenfield's efforts to acquire 1600 Arch Street or, for that matter, the cash settlement forged by Alderman and Jacobs at the October 14, 1999 meeting." Pl. sur-reply br., at 7.

Rule 1.7(b) of the Rules of Professional Conduct is relevant to this dispute and provides in pertinent part:

"A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or *by the lawyer's own interests,* unless:

"(1) the lawyer reasonably believes the representation will not be adversely affected; and

"(2) the client consents after full disclosure and consultation. . . ." *Id.* (emphasis added)

With respect to whether a client may waive a conflict, the comment to Rule 1.7 explains as follows:

"[A]s indicated in . . . paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the cir-

cumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." *Id.*

Additionally, in regards to a conflict presented by the lawyer's own interests, the comment to Rule 1.7 also relates that:

"The lawyer's own interests should not be permitted to have adverse effect on representation of a client. . . . If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. . . ." *Id.*

Moreover, the mere existence of potential claims against the attorney does not automatically disqualify that attorney under Rule 1.7(b). *Lease v. Rubacky,* 987 F. Supp. 406, 408 (E.D. Pa. 1997). Rather, the question is whether the existence of potential claims so affects the adequacy of representation as to mandate disqualification because the lawyer or law firm is unlikely to advise the client to pursue such claims. *Id.* See also, *J & J Snack Foods Corp. v. Kaffrissen,* 2000 WL 562736 at *3-4 (E.D. Pa. May 9, 2000) (holding that decedent's wife's potential claims against attorney creates directly adverse interests that affect the adequacy of representation in present action where wife and attorney are both co-defendants). Nonetheless, where potential claims are speculative and not likely to be pursued, full and adequate representation may not be impaired. See *Hamilton,* 645 F. Supp. at 61-62.

Applying these principles to the present case, it seems clear that a reasonable attorney could conclude that Silberman's representation of Greenfield in this matter would *not* be so adversely affected as to negate Greenfield's clear choice of counsel. It is true that Silberman

did extend an offer of $525,000 for settlement of the Greenfield/Quinnco litigation. See compl., exhibit P. It is also true that Silberman was present at the settlement discussion on June 17, 1999 which occurred between Maloney and Greenfield and where the sale of 1600 Arch Street for $8,500,000 in exchange for settling the Greenfield/Quinnco litigation, was first mentioned. Pl. sur-reply br., at 2. However, it is undisputed that Silberman was absent from the October 14, 1999 meeting which appears to be the pivotal event giving rise to Greenfield's claim against defendants in regards to 1600 Arch Street. Plaintiff also disputes that Silberman was involved with preparing the offer to purchase 1600 Arch Street for $8,500,000 or many of the circumstances involving this "buy/sell" alternative.

Under the circumstances, it does not appear at this time that Silberman's representation of Greenfield in this matter gives rise to such a direct conflict of interest under Rule 1.7(b) as to affect the adequacy of his representation of Greenfield.

### III. *Silberman Need Not Be Disqualified at This Stage of the Litigation Pursuant to Rule 3.7 of the Pennsylvania Rules of Professional Conduct Even if He Is Ultimately Shown To Be a Material and Necessary Witness at Trial*

Defendants also argue that Silberman must be disqualified from appearing as trial counsel in this case because he is a necessary witness at trial and will be called by the defendants. Specifically, defendants assert that Silberman's participation and advice to Greenfield with respect to the Greenfield/Quinnco settlement will be crucial to the defense since Greenfield's ulti-

mate settlement with Quinnco for $525,000 was accomplished (1) with Greenfield knowing that Quinnco would not agree to sell him 1600 Arch Street; (2) with Greenfield knowing all material facts concerning the relationships between Keating, Wolf Block and Quinnco; and (3) upon the advice of Silberman. Defs. mem. of law, at 15. For these reasons, defendants contend that "Silberman is likely to be the only witness who can testify to many of the facts bearing on the settlement between Greenfield and Quinnco" and his testimony is likely to be adverse to Greenfield. *Id.* at 15-16.

Plaintiff, in turn, argues that Silberman can only testify to the substance of the telephone call made by Jacobs to Silberman on the afternoon of October 14, 1999 regarding an additional contingency to the settlement of the Greenfield/Quinnco litigation; *i.e.,* that Wolf Block was to get a commitment of business from SunAmerica in order for the settlement to take place. Pl. mem. of law, at 20 n.26. Plaintiff also asserts that Jacobs, on that same day and prior to his telephone call to Silberman, had telephoned Mr. Greenfield and related the same matter to Mr. Greenfield regarding the contingency. *Id.* See also, compl. at ¶¶70-71. Defendants, in essence, have admitted that Jacobs telephoned both Greenfield and Silberman on the afternoon of October 14, 1999, but they deny that Jacobs added any contingency to the settlement. See defendants' proposed amended answers to the complaint at ¶¶70-71, attached to pl. mem. of law, at exhibit A. Rather, defendants assert that "Greenfield, Quinnco, and Wolf Block all were already aware that Wolf Block was contributing to the settlement, and that its contribution was contingent upon the firm getting business from SunAmerica." *Id.* Under these cir-

cumstances, plaintiff contends that Silberman's testimony would be cumulative.

Though Silberman might ultimately be shown to be a material and necessary witness at trial, from whom critical evidence may not be obtained elsewhere, Silberman need not be disqualified at this stage of the litigation.

Pennsylvania has adopted the advocate-witness rule provided by Rule 3.7 of the Pennsylvania Rules of Professional Conduct, which states as follows:

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or

"(3) disqualification of the lawyer would work substantial hardship on the client." *Id.* See also, *Commonwealth v. Gibson,* 448 Pa. Super. 63, 70, 670 A.2d 680, 683 (1996) ("appearance of an attorney as both advocate and witness at trial is considered highly indecent and unprofessional conduct to be avoided by counsel and to be strongly discountenanced by colleagues and the courts"). The advocate-witness rule serves to protect the interests of the parties since "[c]ombining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Pa. R.P.C. 3.7 cmt. Additionally, the comment to Rule 3.7 explains the following:

"The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by

others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof. . . ." *Id.* See also, Eric G. Luna, *Avoiding a "Carnival Atmosphere": Trial Court Discretion and the Witness-Advocate Rule,* 18 Whittier L.Rev. 447, 451 (1997) (explaining that the rule is designed to protect the legal process itself and preserve the distinction between advocacy and evidence). However even assuming that counsel is likely to be a necessary witness at trial, the consensus in Pennsylvania is that counsel may still represent a client in the pre-trial stage. *Golomb & Honik P.C. v. Tareq Ajaj,* November 2000, no. 425, slip op. at 5 n.6 (C.P. Phila. Apr. 5, 2001) (Herron, J.) (discussing Pennsylvania authority for this proposition).[45] See also, *Schwartz v. Industrial Valley Title Insurance Co.,* 1997 WL 330366 at *6 (E.D. Pa. June 5, 1997)) ("[Counsel] would not be disqualified as [plaintiff's] counsel solely because he might be a pro-

---

45. See *Davisair Inc. v. Butler Air Inc.,* 40 D.&C.4th 403, 406 (C.P. Allegheny Cty. 1998) (Wettick, J.) ("[t]here is no prohibition against [an attorney-witness] providing representation prior to the trial."). Pennsylvania and Philadelphia Bar Association ethics opinions agree with this assessment. See Pa. Bar Ass'n Comm. on Leg. Eth. & Prof. Resp. inf op. no. 96-15 (1996), at 1 ("there is no . . . bar to an attorney witness acting as an advocate in pre-trial proceedings"); Pa. Bar Ass'n Comm. on Leg. Eth & Prof. Resp. inf op. no. 94-153, at 2 (1994) ("[t]he key words in Rule 3.7] are 'act as advocate at a trial.' Accordingly the proscription is only with reference to 'a trial' "); Pa. Bar Ass'n Comm. on Leg. Eth. & Prof. Resp. inf. op. no. 92-150, at 2 (1992) ("insofar as the nature of your legal representation involves negotiation and trial preparation work, as opposed to the actual representation of the corporation in a trial, the rule would not prohibit you . . . from representing the corporation"); Phila. Bar Ass'n Prof. Guid. Comm. guid. req. no. 88-35, at 1 (1988) ("it is premature to require your withdrawal during pre-trial proceedings because Rule 3.7 only precludes a lawyer-witness from acting as counsel at trial").

spective witness unless that prospect would become likely rather than merely possible.").

To establish that an attorney will be a "necessary" witness, it must be shown that "the proposed testimony is relevant material and unobtainable elsewhere." ABA Ann. Model R.P.C. 3.7 cmt., at 9. See also, *United Food and Commercial Workers v. Darwin Lynch,* 781 F. Supp. 1067, 1069-70 (M.D. Pa. 1991). This issue of "necessity" was deftly addressed by the trial court in *Kehrer v. Nationwide Insurance Co.,* 21 D.&C.4th 385 (C.P. Lancaster Cty. 1994) (Farina, J.), which involved allegations of bad faith in failing to settle plaintiffs' underinsured motorist claim. In that case, the trial court determined that plaintiff's counsel need not be disqualified pursuant to Rule 3.7 since defendants failed to show (1) that evidence on the contested issue of bad faith was not available from any other witness and (2) that counsel's proposed testimony would prejudice plaintiffs or further the interests of the defense. 1994 WL 805877 at *5. The court explained that "the term 'necessary' means no other witness could testify, and precludes disqualification if the lawyer's testimony would be merely cumulative." *Id.* at *3. (citations omitted) The court also related that the mere fact that defense counsel would likely call plaintiff's counsel in its case in chief is not sufficient to have opposing counsel disqualified. *Id.* at *4. The court stated as follows:

"To hold otherwise would encourage abuse of the advocate-witness rule for tactical reasons. If disqualification motions were routinely granted in such situations, the temptation to remove opposing counsel from the litigation would be great." *Id.* The three-part test for disqualifying an attorney based on the advocate-witness

rule is as follows: (1) it must be shown that the attorney will give material evidence to the determination of the issues being litigated; (2) the evidence cannot be obtained elsewhere and (3) the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client. *Id.* (quoting *Smithson v. United States Fidelity & Guaranty Co.,* 411 S.E.2d 850, 856 (W.Va. 1991)).

Here, it is unclear that Silberman's proposed testimony is evidence that cannot be obtained elsewhere or that his proposed testimony is material. This determination awaits the eve of trial. It is undisputed that Silberman represented Greenfield in the Greenfield/Quinnco litigation and that Silberman had extended an offer to settle the matter for $525,000. It is also undisputed that Silberman was not present at the October 14, 1999 meeting, which took place at Wolf Block's offices, and which gives rise to plaintiff's claim against defendants with regards to 1600 Arch Street. What remains in dispute is whether Alderman and/or Jacobs of Wolf Block purported to give legal advice to Greenfield and act as its representative during that meeting. Further, the parties dispute whether Jacobs added a contingency to the settlement of the Greenfield/Quinnco litigation. Nonetheless, there appears to be no prohibition against Mr. Greenfield giving testimony on this issue and Wolf Block is not prevented from putting on its own witnesses to refute plaintiff's evidence. Any testimony that Silberman may give in this regard could well be material at the time of trial.

Nonetheless, this court need not disqualify Silberman at this juncture and Silberman may still represent Greenfield in all pre-trial matters.

## CONCLUSION

For the reasons set forth above, this court is entering a contemporaneous order denying defendants' motion to disqualify Silberman and his law firm as plaintiff's counsel without prejudice to refile at a time closer to the trial date in the event that defendants are able to establish that Silberman's disqualification is then appropriate.

## ORDER

And now, May 14, 2001, upon consideration of the defendants' motion to disqualify plaintiff's counsel, Michael S. Silberman, Esquire and Silberman and Di-Fillippo P.C., plaintiff's response in opposition thereto, all respective memoranda and all other matters of record and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion is denied without prejudice.