## Shagla v. Curtis

*George M. Schroeck,* for petitioner.
*David W. Swanson,* for respondent.

WOLFE, *J.,* June 29, 1976—Plaintiff has filed a petition in the form of "warrant of attorney" requesting that Attorney David W. Swanson and the firm of Swanson, Bevevino and Millin, P. C., be disqualified from representing defendant in the within cause of action for the reason Attorney Swanson represented the Estate of Minnie Nelson, the plaintiff, and other heirs of decedent and that an oil and gas lease was an asset of the estate.

An evidentiary hearing on the petition fairly establishes that during the course of administration of the estate, plaintiff, a daughter of decedent, generally discussed with Mr. Swanson her concern there may not be a "correct tally" of 20 oil and gas wells in operation under a lease executed by her mother to defendant and the implication was there may be a commingling of the oil produced from the Nelson lease with other oil owned by Mr. Curtis. The issue of commingling as well as the issue of the validity of the lease forms the basis of the current lawsuit.

The evidence also fairly establishes that, during the course of the administration of the estate, Mr. Swanson was in no way given any confidential information that could be used favorably to his present client, Mr. Curtis, or that Mrs. Shagla had retained him to pursue any action against Mr. Curtis or others. She did testify she asked Mr. Swanson to look into the issue and stated he said in the past he represented Mr. Curtis and if any issue

arose over her concern, he would have to disqualify himself. Further, her testimony was Mr. Swanson told her he would talk to Mr. Curtis and tell her where the pipes (oil pipes) run and connected to alleviate her concern of commingling.

Mr. Swanson did not draw the oil and gas lease in question nor did he have any consultation with Mr. Curtis prior to the commencement of the within action. The attorney did have correspondence with Quaker State Oil Refining Corporation, the purchaser of the oil subsequent to the closing of the estate and after his services were terminated, and one letter under date of September 5, 1975, addressed to him indicates that one of the assignees from Mrs. Nelson, to wit, her heirs, were concerned with Quaker State coming on her property. This letter would indicate Mr. Swanson had some discussion with Quaker State concerning the status of the oil and gas lease as well as to the possibility of an impending dispute concerning the proper disposition of the oil and payment thereof.

Mr. Swanson relies upon Seifert v. Dumatic Industries, 413 Pa. 395, 197 A.2d 454 (1964), to support his position that neither he nor his firm should be disqualified. This case holds the Canons of Professional Ethics will not permit an attorney to represent conflicting interests unless there is a definite agreement after a full disclosure of the facts. The case further holds, however, that "[t]he test in such cases is not the actuality of conflict but the possibility that conflict may arise."

In Jedwabny v. Philadelphia Transportation Company, 390 Pa. 231, 135 A.2d 252 (1957), the court held, under Canon 6 of the Canons of Professional Ethics adopted by the American Bar Associ-

ation and the Pennsylvania Bar Association, "It is unprofessional to represent conflicting interests, except by expressed consent of all concerned given after a full disclosure of the facts. Within the meaning of this Canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

In the instant case, we cannot conclude fairly there is a "conflicting interest" as the canon expresses or to which the cases speak, because the settlement of the Nelson estate had no direct or indirect connection with the subject matter of the current lawsuit except the lease was an asset of the estate. During the course of the administration, although plaintiff expressed a general concern that the estate may not be receiving its full portion of oil produced from the lease, nonetheless, the estate was closed without any further inquiry on this issue; indeed, when the possibility of the commingling issue was discussed, plaintiff was advised the attorney would disqualify himself as he represented defendant as a prior client which we interpret to mean he would disqualify himself from continuing to represent the estate or plaintiff individually.

The cases finding a conflict of interest is where there is a simultaneous representation of two or more clients by one attorney or, if not representation at the same time, confidential communications in a professional capacity were obtained by the attorney from a client that he could possibly use against him in a subsequent suit representing another client.

However, we are not satisfied simply because there is no conflict of interest or that there were no

confidential communications to the attorney by plaintiff that could be used against her in the instant suit that the matter is settled. Canon 9 of the Code of Professional Responsibility of the American Bar Association requires a "lawyer should avoid even the appearance of professional impropriety." The comments of that canon point out that public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. "On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client."

Canon 4 of the same code provides, "[a] lawyer should preserve the confidences and secrets of a client" and, under the disciplinary rules of Canon 4 and the notes thereof, admonishes that an attorney must not accept professional employment against a client or a former client which will, or even may require him to use confidential information obtained by the attorney in the course of his professional relations with such client regarding the subject matter of the employment.

Thus, although the issue of conflicting interest is to be considered, so, too, is the viewpoint of the public as to what may appear as improper conduct. Balancing against this "public judgment" is the right of counsel to practice his profession, to represent clients that he feels have worthy causes and to make a living for himself and his family.

We cannot conclude there is any impropriety of counsel in the instant case by his representation of defendant, a long-standing former client, nor is there a reasonable appearance of impropriety. It is true Mrs. Shagla did express concern of the con-

duct of defendant but this, in our opinion, cannot be interpreted as a confidential communication or a communication that could be used now to her disadvantage in the instant case, especially since the lawsuit was not filed until after the conclusion of the estate and the services of counsel had been terminated. We think it is also important to note counsel is not representing his client in an affirmative position against plaintiff but, on the contrary, is defending a suit brought by her and, although this may be a difference without a real distinction, we point it out merely for the purpose to underline the fact that public trust in the legal profession is not being deteriorated in that a lawyer should have the right to defend a cause of action brought by a former client if, indeed, plaintiff is a former client. In this regard, the former client is the estate of Minnie Nelson and not plaintiff in the instant case.

For these reasons, we conclude the petition to remove counsel and disqualify his firm must be denied and enter the following

ORDER

And now, June 29, 1976, the petition to disqualify Attorney David W. Swanson and the law firm of Swanson, Bevevino and Millin, P. C., is denied.