## Gross v. Specter

*Henry Fitzpatrick*, for plaintiff.
*Gordon Gerber*, for defendant.

BULLOCK, *J.*, November 4, 1980—Before us is the petition of defendant, Joan Specter (Specter),

for disqualification of Liebert, Short, Fitzpatrick & Lavin (the Liebert firm) as counsel for plaintiff, Herbert Gross (Gross). This litigation was initiated by a petition for involuntary dissolution of Joan Specter's Desserts, Inc., a corporation. Defendant, Joan Specter, has also filed a petition to bar Gross from prosecuting the aforesaid petition for dissolution and to require that the dispute be submitted to arbitration.

At a conference of counsel and the court (which conference was stenographically transcribed) the following facts appeared to be undisputed: Joan Specter's Desserts, Inc. is a corporation created by plaintiff and defendant in or about 1977. Each party was issued the same number of shares and both parties are the only directors of the corporation. Since its inception, the Liebert firm has represented the corporation on various occasions, but has not been paid a regular retainer. Defendant, by agreement of the parties, was designated chief executive officer and production manager of the corporation. Defendant has consulted with the Liebert firm in her capacity as an officer and director of the corporation. Defendant has also occasionally consulted with her husband, Arlen Specter, Esq., an attorney, or some other member of her husband's firm, Dechert, Price & Rhoads, in connection with her corporate position. At the time of incorporation, plaintiff was represented by the Liebert firm, by which he had been previously represented, and defendant was represented by her husband's firm. The parties have been unable to agree on matters of corporate interest in recent months and in their attempts to resolve the situation, plaintiff has been represented by the Liebert firm and defendant has been represented by her husband's firm.

In his petition for involuntary dissolution of the corporation, plaintiff avers that defendant has been guilty of mismanagement and waste of corporate assets. He further avers that she used corporate employes for her own personal purposes, including "political campaigns and matters related to her office in City Hall."

In her petition for disqualification, defendant avers that the Liebert firm has learned or had access to confidential information concerning defendant in connection with her business interest in the corporation and with her relationship with plaintiff. She avers that she has "confided" in the said firm. Defendant further contends that the Liebert firm's representation of plaintiff in connection with the petition for dissolution violates various canons of the Code of Professional Responsibility, more specifically, Canon 4 relating to the attorney's duty to preserve the confidence of his client, Canon 5 relating in part to a corporate attorney's duty to represent the corporation, owing his allegiance to the corporation and not to persons connected with the corporation, and Canon 9 relating to an attorney's duty to avoid even the appearance of professional impropriety.

The petition before us, in our view, raises the fundamental issue of the propriety of an attorney who has represented two persons jointly, thereafter representing one of them in a dispute arising out of the matter in which he represented them jointly. In our view, the same problem arises whether we are concerned with equal shareholders of a corporation, partners, joint venturers or spouses.

Plaintiff relies primarily on the case of Seifert v. Dumatic Industries, 413 Pa. 395, 197 A. 2d 454 (1964). That case involves appeals in two actions by the same parties, one a shareholder's derivative ac-

tion in equity, and the other, a petition for dissolution of the corporation. In the former action, the court below had directed corporate counsel to withdraw as attorney for the shareholders and in the latter action, the said court had permitted the firm to remain as counsel for petitioner. The Supreme Court held that counsel should have been permitted to remain in both actions. It stated as follows at pp. 397-99:

"Considering first the merits of the petition for removal in No. 217, it is well established by decisions of this Court, referring to canon 6 of the Canons of Professional Ethics, that attorneys will not be permitted to represent conflicting interests unless those interests agree to be so represented. The test in such cases is not the actuality of conflict but the possibility that conflict may arise.
". . .

"Dumatic is a closely-held corporation in which each stockholder owns 50% of the stock and appoints two directors. Apart from the incorporation agreement, however, it is nothing more than a conduit for the reception of patents from Seifert on the one hand and working capital from Globe on the other. As such, it is merely an appendage to the separate businesses of these two stockholders.
". . .

"Under the facts presented we are unable to discern any interest of Dumatic which could come into conflict with the position of Seifert in the underlying cause of action."

The court further noted in footnotes at pp. 399-400:

"5. We question the standing of Globe to raise the question of conflict of interest. It is only the corpora-

tion which would be injured thereby. Of course, the conflict of interest question may be raised by the court sua sponte. . . .

"7. We are unable to discover any facts in the record which would indicate that Globe would be prejudiced by counsel for Seifert also having been counsel for Dumatic, via confidential communications or otherwise."

We believe Seifert is distinguishable from the present case. On the facts of Seifert, the Supreme Court found no evidence that the objecting party would be in any way prejudiced by the representation involved. Moreover, it does not appear from Seifert that prejudice was even claimed; the issue seems to have been presented as a theoretical charge of improper representation based solely on the fact that the attorney represented both the corporation and the dissatisfied shareholder. In Seifert, the corporation involved was found to be simply a conduit rather than an active corporation. Finally, and most importantly, Seifert lacks the personal quality of the present case; there is no reference in Seifert to personal communication between counsel objected to and the objecting party. We believe the second footnote above suggests that where there is an issue of confidential communication, representation by the corporate counsel of one corporate owner against another would be inappropriate.

Defendant has submitted to us two informal opinions of the American Bar Association's Standing Committee on Professional Ethics. The first, No. 516, dated February 15, 1962, advises that it would be improper for the attorney for a corporation which has been losing money to represent certain shareholders in proceedings to liquidate the corpo-

ration. Relying upon the Canons of Professional Ethics, the Committee stated:

"In Formal Opinion 86, this Committee held it was improper for the general counsel of a corporation to act as proxy for one contending group of stockholders or to solicit support therefor, at an election of directors where there is a contest involving future management.

"In our opinion, the loyalty you owe the corporation, your client, under Canon 6, prevents you from representing stockholders who are seeking to eliminate the corporation."

Informal Opinion No. 885 of the same committee, dated November 2, 1965, quotes the following language from a New York County Bar Opinion:

"'The rendition of professional services by an attorney to one party to a litigation, which thus establishes necessarily a relation of trust and confidence, precludes the acceptance of employment by such attorney in any subsequent phase of the same litigation from the adverse party. A client is encouraged to make full disclosure of all facts to his attorney, and he should be justified in feeling that his attorney will never be found helping the other side of the litigation. The matter is not to be determined by such facts as that the original services were rendered on the employment of another lawyer, or that the services may have had no particular bearing upon the phases of the litigation contemplated to be conducted on behalf of the new employer, or that it is probable that no information was acquired in the first employment that might prove useful in the subsequent employment. Irrespective of any actual detriment, the first client might naturally feel that he had in some way been wronged, when confronted by a final decree ob-

tained by a lawyer employed in his behalf in an earlier part of the same litigation. To maintain public confidence in the Bar, it is necessary not only to avoid actual wrong doing, but an appearance of wrong doing.'"

Although this language refers to separate phases of litigation, the principle applies, in our view, to representation and advice, as well as to litigation. Defendant also calls our attention to Opinion No. 491 of the North Carolina Bar Association's Ethics Committee, dated October 21, 1965, which states in part as follows:

"OPINION: It would seem that the attorney for the dissolved corporation, prior to its dissolution, represented its three stockholders. In any lawsuit growing out of such dissolution between the original stockholders, the attorney for the dissolved corporation should keep hands off for he is evidently in possession of facts which he should not use to the advantage of any one of the three old stockholders."

A lawyer who represents two equal parties who have an actual or potential adverse interest has a delicate job. He is obliged to represent both with equal candor and impartiality. Each party, however, is aware of the lawyer's relationship to the other and at least tacitly accepts the dual representation. We do not believe any such acquiescence extends to the lawyer's deserting one party to work against him or her on behalf of the other.

In the present case, we do not believe the existence of a corporation is the crucial fact. What is most important is that the Liebert firm was communicating and dealing with two equal human persons. When the corporation paid the law firm's fees, in effect, the two parties were jointly paying the fee. The attorney-client relationship existed be-

tween each party and the law firm. Should one co-owner who maintained this kind of relationship with the law firm here involved, in the event of a dispute with the other co-owner, have to be confronted by the law firm as opponent where there was never any agreement as to this possibility? This is the fundamental question. We recognize, of course, that defendant's opponent in this litigation is actually plaintiff. However, we suspect that for most litigants the opposing attorney is an opponent. In our view, any litigant would feel legitimately uncomfortable knowing that he or she had communicated on an amicable basis with an attorney who turned out to be opposing counsel in a dispute involving the subject matter of the prior amicable discussion. We believe that in the absence of an agreement to the contrary, an attorney who has regularly represented and/or advised a person with reference to a business enterprise should not be permitted to represent either opposing third parties or opposing co-owners against that person in any dispute involving the conduct of the business during the period of representation and/or advice.

It was suggested that we should not resolve this issue without hearing testimony as to the details of the relationship between plaintiff, defendant, and the Liebert firm. We do not, however, believe that this important issue should be one of fine lines to be determined in each case. Propriety of representation, in our view, is certainly not one on which much judicial time should be spent. We believe that proper professional guidelines should make this unnecessary. In our opinion, if an attorney desires to represent two people jointly and also to represent one of them against the other in case of dispute, he should obtain the consent of both parties to do so. If

he does not, then he should not be eligible to represent one against the other, at least as to any matter about which he had represented them jointly.

There is one further aspect of the matter about which we wish to comment. We believe there is a serious psychological question as to how impartial an attorney can be in representing two people jointly, if he harbors the thought that ultimately he may have to choose to represent one against the other in the event of conflict. An attorney may be able to see the seeds of an impending conflict even before his clients. In any event, he may be in a position to favor the position of one of his clients over the other, even before conflict erupts. If he knew that in the event of conflict he could represent neither against the other, he would have greater motivation to be an even-handed peacemaker.

If this were a case where absence of prejudice were clear and obvious, we would feel bound by Seifert. However, the issue of prejudice having been raised, we do not believe we are obliged to hear evidence and resolve it. The basic facts of the present case, in our view, prima facie suggest a conflict. We believe it important to avoid even the appearance of conflict. Under the circumstances, we conclude that the Liebert firm should not continue to represent Gross against Specter with reference to the business affairs of the subject corporation.

## ORDER

And now, November 4, 1980, the petition of defendant, Joan Specter, requesting that this court find the law firm of Liebert, Short, Fitzpatrick and Lavin (including all its members and associates) disqualified as to representation of plaintiff, Herbert Gross, in the above-captioned litigation is

290

granted. The said law firm is hereby directed forthwith to withdraw as attorneys for plaintiff in the said litigation.