JUSTICE DOUGHERTY, concurring
I join Sections I and II of the majority opinion, and concur in the result as to the remainder. I write separately to note what is, in my view, a critical difference between this case and In re Adoption of L.B.M. , 639 Pa. 428, 161 A.3d 172 (2017).
In L.B.M. , the termination of parental rights (TPR) proceedings were initiated by the guardian ad litem (GAL) on behalf of an eight-year-old, articulate child who equivocated over his preferred outcome. Id. at 176-177. The unanswerable question giving rise to structural error under those circumstances was how the child's preferences might have been advanced more definitively had legal counsel been appointed as required under 23 Pa.C.S. § 2313(a). Id. at 182. There was manifest potential for a conflict of interest between the child's best interests and legal interests in the GAL-attorney's zealous pursuit of the termination of the mother's parental rights.
Here, there is no dispute over the children's preference: the parties agreed they cannot have formed one. See Majority Opinion, op. at 1089.[1] Moreover, the Allegheny County Office of Children Youth and Families (CYF) initiated the TPR proceedings, and was involved with the children almost since birth, having custody of the two-year-old and three-year-old for over half their young lives. Id. at 1083-84. The GAL-attorney represented the children's best interests and legal interests without an apparent conflict of interest. Under the circumstances presently before us, I consider the appointment of separate counsel to represent the child's legal interests to be unnecessary.
JUSTICE DONOHUE, concurring and dissenting
As this Court held in In re L.B.M. , 639 Pa. 428, 161 A.3d 172 (2018), the clear and unambiguous language of 23 Pa.C.S. § 2313(a) requires that the orphans' court "appoint counsel to represent the child" in a proceeding to terminate her parents' rights, which we further stated means "the child's preferred outcome." Id. at 174. Given the age of the children and the facts of record, we were not asked in L.B.M. to decide the question presented here - what is the legal interest of a child too young to express a desired outcome?[1] For the reasons explained in this Concurring and Dissenting Opinion, it is my view that there is a presumption that a child's legal interest is aligned with her parent, and in a contested termination proceeding a non-expressive child is presumed to oppose termination of her parent's rights.
The Majority has concluded that since a non-expressive child cannot make her desired outcome known to counsel, the answer is self-evident - the child has no wishes for purposes of the termination *1094 proceeding. See Majority Op. at 1089-90 ("[I]f the wishes of the child cannot be ascertained, the GAL has no duty to "advise the court" of such wishes. For purposes of the proceeding, such wishes do not exist."). The problem with this conclusion is readily apparent - section 2313(a) mandates that the orphans' court "appoint counsel to represent the child" in the proceeding. We unanimously agreed in In re L.B.M. that section 2313(a) counsel must represent "the child's preferred outcome." The logical extension of the Majority's holding is that a child who cannot express a preferred outcome has no need for the appointment of counsel under section 2313(a) since the child has no legal interest (i.e., no preferred outcome).
Apparently recognizing the dilemma, the Majority resolves it by importing language from section 6311(b) of the Juvenile Act, which governs the powers and duties of a GAL representing a child in a dependency action, to section 2313(a) of the Adoption Act. Id. at 1089-90. Respectfully, in my view, the Majority's approach is fundamentally flawed for several reasons.[2]
First, it is a well-settled principle of statutory construction that when interpreting a statute, courts are bound by the plain, unambiguous language of a statute, and "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded." Fonner v. Shandon, Inc. , 555 Pa. 370, 724 A.2d 903, 907 (1999) (citing Cali v. City of Philadelphia, 406 Pa. 290, 177 A.2d 824, 832 (1962) ). "Moreover, where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent." Id. (citing Commonwealth v. Bigelow , 484 Pa. 476, 399 A.2d 392, 395 (1979) ). "In construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted[.]" L.S. ex rel. A.S. v. Eschbach , 583 Pa. 47, 874 A.2d 1150, 1156 (2005) (quoting Kusza v. Maximonis, 363 Pa. 479, 70 A.2d 329, 331 (1950) ).
Section 6311 of the Juvenile Act provides that a GAL in a dependency proceeding is tasked with representing both the best interest and legal interest of the child, 42 Pa.C.S. § 6311(a), and that in the latter capacity, the GAL must
[a]dvise the court of the child's wishes to the extent they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the *1095 child, [the GAL shall] determine to the fullest extent possible the wishes of the child and communicate this information to the court.
42 Pa.C.S. § 6311(b)(9) (emphasis added). Section 2313(a) of the Adoption Act, on the other hand, simply requires the orphans' court to "appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." 23 Pa.C.S. § 2313(a). It calls for the appointment of "counsel," not a GAL, which is the role that section 6311 of the Juvenile Act addresses. Section 2313(a) contains no provision to allow for a dual representation role in termination proceedings and makes no exception to the required representation of the child's legal interests for circumstances where the attorney cannot ascertain the child's wishes.
The General Assembly was unquestionably aware that involuntary termination proceedings are often brought when children are very young and unable to express their preferences. In fact, the General Assembly adopted the federal Adoption and Safe Families Act, which was enacted in an effort to curb the number of children that were growing up in foster care by requiring, inter alia, that juvenile courts ensure that petitions to terminate parental rights are filed, in appropriate cases, once a child had been in an out-of-home placement for fifteen of the past twenty-two months. See 42 U.S.C. § 675(5)(E) ; 42 Pa.C.S. § 6351(f)(9) ; In re Adoption of S.E.G. , 587 Pa. 568, 901 A.2d 1017, 1019 (2006).
The General Assembly could have written section 2313 to require the appointment of counsel only where the child could express a desired outcome. The General Assembly could have included a provision in section 2313 that counsel representing the child is only required to communicate the child's wishes to the extent they can be ascertained, as it did in section 6311(b) of the Juvenile Act. It could have provided for a GAL, instead of counsel, to represent a non-expressive child. The General Assembly did not choose any of these options. Because the General Assembly omitted from the Adoption Act provisions that it chose to include under the Juvenile Act, reading this language into the Adoption Act runs directly counter to our rules of statutory construction.[3]
Moreover, the stakes are very different in dependency and termination proceedings. Termination of a parent's rights is, in essence, a death sentence for the parent/child relationship, as it is permanent and irrevocable. See In Interest of Lilley , 719 A.2d 327, 329 (Pa. Super. 1998). A finding of dependency, while also very serious, is a temporary intrusion into the life of a family. It is a remediable situation, which, ideally, will conclude with the family remaining intact. See 42 Pa.C.S. § 6301(b)(1) (identifying the purpose of the Juvenile Act as, inter alia, "[t]o preserve the unity of the family whenever possible"). For this reason as well, I find section 6311(b)'s explanation of the role of a GAL in a dependency proceeding to be inconsequential and of little value when interpreting the child's statutory right to counsel in a termination proceeding. In my view, it is of the utmost importance that a child's legal interest in a termination proceeding *1096 is squarely and solely represented by her appointed counsel.
It is a well-settled constitutional principle that a parent has a fundamental liberty interest "in the care, custody, and management of their child." Santosky v. Kramer , 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). I acknowledge that the United States Supreme Court has not yet ruled upon whether a child has a separate and independent constitutionally protected right to be cared for and managed by her parent. Michael H. v. Gerald D. , 491 U.S. 110, 130, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) ("We have never had occasion to decide whether a child has a liberty interest, symmetrical with that of her parent, in maintaining her filial relationship."). In Santosky , however, the high Court recognized that a child has a right to the preservation of the parent/child relationship that is intertwined with the right of the parent. In Santosky , the Court was tasked with determining the burden of proof that must be met to involuntarily terminate a parent's right to his child, and held that, at a minimum, termination cases must be proven by clear and convincing evidence. Santosky , 455 U.S. at 769, 102 S.Ct. 1388. In so concluding, the Santosky Court rejected the argument that proof by a preponderance of the evidence was the appropriate standard in a termination case because "the child's interest in a normal family home" must be given equal weight "against the parents' interest in raising the child." Id. at 759, 102 S.Ct. 1388. The Court stated that "the State cannot presume that a child and his parents are adversaries" in a termination proceeding, as they "share a vital interest in preventing erroneous termination of their natural relationship." Id. at 760, 102 S.Ct. 1388.
The Majority focuses on the adversarial posture of a parent versus the state as the driving force in the placement of the burden of proof and the ultimate holding of Santosky. See Majority Op. at 1091-92. True as this may be, in the same context, we must be cognizant of our General Assembly's mandate that the child at the center of the termination proceeding must have counsel in the proceeding who picks a side in the contest and participates, either for or against the parent's position. Santosky teaches that we cannot presume in this regard that the child is adverse to the parent's position.
Santosky reflects a clear recognition that the child in a termination proceeding has a legal interest in maintaining the parent/child relationship, what is referred to as "their natural relationship." Santosky , 455 U.S. at 760, 102 S.Ct. 1388. This conclusion is informed not only by the human experience but by logic, as it would be incongruous for a parent to have a fundamental constitutional right to raise his child, but for the child to be born completely untethered in this regard to her parents. The child unquestionably has an interest in the outcome of a termination decision, as it dictates not only whether the parent/child relationship will remain intact, but whether other consanguineous relations will continue and whether the child will have a right to inherit and receive other financial benefits from her parents and their lineage. Our General Assembly has recognized that a child has a protectable legal interest at a termination proceeding based on its decision to require counsel to represent a child in a contested termination proceeding - if a child had no interest to protect, there would be no need for the child to have legal representation.[4]
*1097 The Majority's conclusion that a non-expressive child has no legal interest to protect in a termination proceeding, and that her right to counsel is therefore protected by a GAL representing her best interest, effectively creates a presumption that the child is in favor of termination in every case in which the GAL agrees with the petitioning party's recommendation to terminate parental rights (or where the GAL is the petitioner). See Majority Op. at 1090 ("there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be"); see also 23 Pa.C.S. § 2512(a) (identifying who may file a petition to terminate parental rights).[5] The reality in the vast majority of termination cases is that the GAL is an active participant providing zealous representation to his or her client through the presentation of evidence in support of termination. In such circumstances, the child is, by necessary implication, an adversary to her parents. Thus, in these cases, the Majority's conclusion that an attorney need only represent a non-expressive child's best interest at a termination proceeding is in direct contravention to Santosky 's admonishment against this presumption. See Santosky , 455 U.S. at 760, 102 S.Ct. 1388.
Of course, the parent's fundamental right to the care, custody and management of his child is not interminable. A parent can voluntarily waive the fundamental liberty interest that he has in rearing his child and relinquish his parental rights. See 23 Pa.C.S. §§ 2501 - 2504. If the parent does not voluntarily relinquish his parental rights, but the petitioner nonetheless proves, by clear and convincing evidence, that termination is warranted under section 2511(a) and (b), the parent likewise forfeits this constitutional right. See generally , 23 Pa.C.S. § 2511(a) - (b) ; Santosky , 455 U.S. at 760-61, 102 S.Ct. 1388.
The child's intertwined legal interest to have the care, custody and management of her parents is likewise malleable. An expressive child can communicate her preference in favor of termination. As a majority of the Court held in In re L.B.M. , in such circumstances, if the child's dependency GAL agrees that termination is in the child's best interest, that attorney can represent the child in the termination proceeding, as there would be no conflict. See In re L.B.M. , 161 A.3d at 184 (Saylor, J., *1098 concurring); id. at 185 (Baer, J., dissenting).
Consistent with Santosky , the human experience and our General Assembly's mandate that counsel represent a child in a termination proceeding, in my view we must presume that the child's preference (and thus her legal interest) is to maintain the parent/child relationship. Consistent with our holding in In re L.B.M. and the obligation of counsel to represent his or her client's wishes (see Pa.R.P.C. 1.2(a) ), this presumption is rebuttable but only in the circumstance where the child expresses a contrary position. If a child is non-expressive, or if a child does not or cannot otherwise make a determination as to her view, the presumption remains that the child's legal interest is in opposing termination.
In light of the recurring issues surrounding appointment of counsel for the child in termination proceedings, it is critical that the appointment and all proceedings surrounding it must be on the record. Moreover, the appointment must be made sufficiently in advance of the commencement of the termination proceedings to allow parents the opportunity to raise an objection to an appointment based on a conflict of interest and for the orphans' court to rule on the disqualification motion. In light of these considerations and my view that there is a rebuttable presumption against termination of parental rights, I envision the following sequence of events in the orphans' court.
Pursuant to section 2313(a) of the Adoption Act, upon the filing of a petition to terminate parental rights, the orphans' court must undertake the appointment of counsel to represent the child. 23 Pa.C.S. § 2313(a). If the orphans' court wishes to appoint the child's dependency GAL as counsel to represent the child in the termination proceedings, the GAL must first determine whether the child is expressive, and if so, the child's preferred outcome of the termination proceeding. If the child is non-expressive (or is expressive and opposes termination) and the GAL agrees that termination of parental rights is not in the child's best interest, the GAL shall so inform the orphans' court and the other parties. The orphans' court thereafter may enter an order appointing the dependency GAL as counsel for the child in the termination proceeding. Otherwise, the orphans' court must appoint new counsel to represent the child.
If, following the exercise of due diligence, the GAL concludes that the child is expressive and that the child does not oppose termination of her parents' rights, and the GAL likewise concludes that termination is in the child's best interest, then the GAL must advise the orphans' court of this conclusion. The child's parents may object to the appointment of the dependency GAL as the child's counsel based on evidence that the child is either non-expressive or that the expressive child opposes termination. Where it is the parent's view that the child is not expressive or that the child does not favor termination, their objection would be premised on the contention that a conflict of interest exists that precludes the GAL's appointment as counsel for the child.[6] Upon parents' objection, the orphans' court must schedule a hearing to determine whether there is a conflict between the child's best and legal *1099 interests such that the GAL is precluded from being appointed as the child's counsel in the termination proceeding.
The authority of a trial court judge to decide whether an attorney is laboring under a conflict of interest is well settled:
A trial judge, in the exercise of his inherent power to control litigation over which he is presiding and his duty to supervise the conduct of lawyers practicing before him so as to prevent gross impropriety, has power to act where the facts warrant it. This supervisory power is analogous to a judge's power to hold in contempt of court a lawyer guilty of contumacious conduct in the trial of a case. Where a breach of ethics is made to appear, the relief is usually the granting of a motion to disqualify and remove the offending lawyer[.]
Slater v. Rimar, Inc. , 462 Pa. 138, 338 A.2d 584, 589 (1975) (footnotes omitted). If, following a hearing, the orphans' court finds that there is a potential conflict between the GAL's representation of the child's legal interest and the concurrent representation of the child's best interests in the ongoing dependency proceedings, the orphans' court must appoint new counsel to represent the child at the termination hearing. See Seifert v. Dumatic Indus. Inc. , 413 Pa. 395, 197 A.2d 454, 455 (1964) ("The test in such cases is not the actuality of conflict but the possibility that conflict may arise."). If, however, the orphans' court is satisfied that the child has expressed her preference in support of termination, the orphans' court may appoint the GAL as the child's counsel in the termination proceeding. Whether it is the GAL or a new attorney, the orphans' court shall thereafter issue an order appointing counsel to represent the child.
Based on my proposed construct, the failure of the parents to object to the appointment of the dependency GAL to represent the child as her counsel prior to the commencement of the termination proceeding would result in waiver of that claim. Nonetheless, I agree with the Majority that in the case at bar, Mother did not waive her argument that the orphans' court improperly failed to appoint counsel to represent the child's legal interests, as the claim currently is not waivable. See Majority Op. at 1087.
In the case at bar, it is uncontested that the children (ages two and three at the time of termination) were unable to express their preferred outcome regarding termination. See Mother's Brief at 23; KidsVoice's Brief at 14; CYF's Brief at 18. Therefore, I conclude that we must vacate the decrees terminating Mother's parental rights to T.S. and E.S. and remand for a new termination proceeding, prior to which the orphans' court must appoint counsel to represent the children's presumptive interest in opposing termination.
In summary, I agree with the Majority's determination, in Part II of its decision, regarding the question of whether Mother waived the issue of the appointment of separate legal counsel to represent the children in the termination proceeding. Otherwise, for the foregoing reasons, I respectfully dissent.

We defined the terms: "the law acknowledges two separate and distinct categories of interest: a child's legal interests, which are synonymous with the child's preferred outcome, and a child's best interests, which the trial court must determine." L.B.M. , 161 A.3d at 174 (citations omitted). Depending on the case and upon the child involved, these interests can diverge.

See also In re D.L.B. , 166 A.3d 322 (Pa. Super. 2017). I discuss D.L.B. and its jurisprudential infirmity infra.

I concur with the Majority on two points. First, I agree that the waiver arguments advanced by Allegheny County's Office of Children, Youth and Families and by the GAL are unavailing. See Maj. Op. at 1086-87. Second, I agree that T.H.-H. ("Mother")'s contention that a presumption should exist to the effect that young, pre-verbal children's legal interests equate to preservation of a family bond is both unsupported in law and unnecessary. See id. at 1090-92.

After the TPR petition in this case was filed on November 9, 2016, the trial court held a permanency review hearing in the dependency proceeding on November 29, 2016, whereupon it scheduled another permanency review hearing for March 28, 2017.

In general, county agencies do not petition for termination of parental rights unless and until the child has been dependent for a significant amount of time. See generally 42 Pa.C.S. § 6351 (requiring the trial court to determine whether the agency had filed for termination of parental rights when the child has been in placement for fifteen of the last 22 months). During that time, the agency, the court, and the parents work toward reunification. Only when it appears that those efforts are in vain does the agency petition to terminate a parent's rights. While assessment of a pre-verbal child's legal interest must include respect for and consideration of the value of retaining the familial connection, there is often in practice very little of a familial bond by the time a case reaches a TPR hearing.

Contrary to the assertion in the Concurring and Dissenting Opinion, see Conc. & Diss. Op. at 1097 n.5, while I do not support a presumption regarding a non-verbal child's legal interests, I do state that Section 2313(a) counsel is tasked to determine the child's legal interests and the trial court must determine the child's best interests. These are separate inquiries and separate obligations.