**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MCKENZIE M. GOFORTH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON E. GOFORTH | : | |
| | : | |
| Appellant | : | No. 895 WDA 2022 |

Appeal from the Order Entered July 19, 2022
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1402 of 2018 G.D.


BEFORE:  BOWES, J., OLSON, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED:  May 24, 2023**

Appellant, Jason E. Goforth (Husband), appeals from the order entered on July 19, 2022, approving the disposition of proceeds from the sale of the marital home and denying a petition for special relief for counsel fees filed by Husband's attorney in this divorce action.  For the reasons that follow, we vacate the order and remand the matter for additional proceedings consistent with this decision.

We briefly explain the facts and procedural history of this case.  On July 5, 2018, McKenzie Goforth (Wife) filed a complaint in divorce.  Thereafter, the trial court summarized the facts as follows:

> [Wife] and [Husband] entered into a marital settlement agreement [(MSA)] on July 2, 2020.  By order, dated August 19, 2020, the [trial] court divorced [Wife] and [Husband] from the bonds of matrimony and incorporated the terms of the [MSA]. [During their marriage, Wife and Husband owned real property in Connellsville, Pennsylvania, which they held as joints tenants by the entireties.  After entry of the divorce decree, the interests Wife

and Husband held in the Connellsville property were partitioned pursuant to the terms of the MSA, which awarded Wife a 60% interest in the Connellsville property and which awarded Husband a 40% share.] [Wife subsequently filed a] petition for special relief [in the trial] court, at the time set for closing the sale of this property, [when she discovered] liens [filed by] Huntington [] Bank and [] Mongell [that had] not been disclosed previously by [Husband] in the divorce proceedings.[1]

By order, dated December 7, 2020, [the trial] court permitted the sale of the property and directed the 40% proceeds distributable to [Husband] to be payable to the escrow account of his attorney, Kevin Henderson, Esquire to be held without release until further order of court setting forth the applicability and priority of liens and ordering distribution of proceeds.[2]

Thereafter, Kevin Henderson, Esquire filed a "petition for special relief: counsel fees" on January 29, 2021, therein alleging that he and [Husband] had entered into a written retainer agreement for representation in the divorce action. Attorney Henderson requested [the trial] court direct his attorney fees be paid first from the sale of the property, alleging that [Husband's] contractual obligation to him require[d] payment of the attorney

---

[1] Wife alleged that the closing for the sale of the marital residence was scheduled for November 13, 2020, with an offer from a third-party in the amount of $165,000.00. **See** Wife's Petition for Special Relief, 11/24/2020, at ¶ 4. Wife averred that "[s]aid closing ha[d] been delayed because there [were] two sizable judgments against [Husband]." **Id.** at ¶ 5. From our review of the record, there is no dispute that Huntington Bank has a recorded judgment against Husband for approximately $150,000.00 on a commercial loan and Mongell obtained judgment against Husband for approximately $525,000.00.

[2] Huntington Bank and Mongell consented to the sale of the marital property, free and clear of the liens. The property was eventually sold on December 17, 2020. Huntington Bank and Mongell settled the priority of their liens agreeing that Huntington would receive 25% of the proceeds of the marital home and Mongell would receive 75%. On December 30, 2020, Huntington Bank and Mongell jointly filed a petition for rule to show cause why the proceeds should not be distributed to them as partial payments for their respective liens.

fees prior to disbursement of the proceeds from the property to other lienholders.

Trial Court Order, 7/19/2022, at *1-2 (unpaginated; unnecessary capitalization omitted). The trial court entered an order on July 19, 2022, denying relief on Attorney Henderson's petition for special relief for counsel fees, "finding that the contractual obligation to pay attorney's fees cannot subvert recorded liens and defeat creditors." *Id.* at *3. The trial court further directed that the net proceeds from the sale of the marital property, held in escrow by Attorney Henderson, "be distributed [with] 25% to [Huntington Bank] and 75% to [] Mongell to be applied as partial payment of the judgment liens[.]" *Id.* at *1. This timely appeal resulted.[3]

On appeal, Husband presents the following issues for our review:

   I.   Does the [c]ourt maintain *custodia legis* over the proceeds of the sale of a marital home held as tenants by the entireties where the divorce proceedings began before the third-party creditor liens against only one spouse were filed, the divorce proceedings were pending and distribution of the proceeds of the sale of the marital home were in furtherance of the parties' equitable distribution of the marital property pursuant to the parties' [MSA]?

   II.  Are married persons free to dispose of entireties properties pursuant to a [MSA] without implicating the rights of third-party creditors of only one spouse?

_____

[3] Husband filed a notice of appeal on August 11, 2022. By order entered on August 15, 2022, the trial court directed Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband complied timely on August 30, 2022. On September 2, 2022, the trial court filed a statement *in lieu* of opinion pursuant to Pa.R.A.P. 1925(a) wherein it relied upon the reasons stated in its order entered on July 19, 2022, as the rationale for its decision.

III.   Did the [c]ourt commit error by failing to take into account the economic injustice that would result by awarding the proceeds of the sale of the marital home to third[-]party creditors?

IV.   Is the contractual right to pay attorney[']s fees out of the gross proceeds of the sale of the marital home for legal work performed in the divorce action which resulted in the creation of the [MSA] which resulted in the sale of the marital home and the proceeds therefrom which was agreed to before any third-party creditor liens were filed superior over third-party creditor rights?

Husband's Brief at 3-4.

Before examining the merits of this appeal, we are cognizant of the following legal precepts. Initially we note that the trial court's Pa.R.A.P. 1925(a) opinion precludes meaningful appellate review. Rule 1925(a), provides, in pertinent part:

[T]he judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, **shall … file of record at least a brief opinion of the reasons for the order**, … **or shall specify in writing the place in the record where such reasons may be found**.

Pa.R.A.P. 1925(a)(1) (emphasis added). Where a trial court fails to address an issue or provides an inadequate recitation of the reasons for its action, we have remanded for the preparation of a more detailed opinion. *See Schubert v. Schubert*, 580 A.2d 1351 (Pa. Super. 1990) (where trial court failed to address contentions raised on appeal even though issues were raised in appellant's exceptions to equitable distribution order, appellate court remanded for trial court to articulate its analysis in accordance with Pa.R.A.P.

1925(a)). "When the resolution of an issue is significant in the determination of an appeal, an appellate court should not attempt to substitute its judgment as a fact finder, but rather, should remand the matter to the trial court or other fact finder which considered the evidence pertinent to the critical questions presented." **See Lanard & Axilbund, Inc. v. Muscara**, 575 A.2d 615 (Pa. Super. 1990) (remanding for development of disposition as to claims for breach of fiduciary responsibility, misrepresentation and mutual mistake where the claims were not addressed in trial court's findings of fact and opinion); **see also Robec, Inc. v. Poul**, 681 A.2d 809 (Pa. Super. 1996) (where trial court wrote letter to the Superior Court Prothonotary *in lieu* of opinion, and Court was unable to discern basis of trial court's order, case remanded for preparation of opinion that addressed specific issues by the appellant). The purpose of Rule 1925(a) "is to facilitate appellate review of a particular trial court order [and] fulfills an important policy consideration by providing … the legal basis for a judicial decision." **Commonwealth v. Parrish**, 224 A.3d 682, 692 (Pa. 2020) (citation omitted).

Here, the trial court entered an order on July 19, 2022 denying Husband's petition for special relief for attorney's fees. In explaining its disposition, the trial court merely referenced a solitary legal citation in its legal determination. **See** Trial Court Order, 7/19/2022, at *1, *citing* 23 Pa.C.S.A. § 3507(a) ("Whenever married persons holding property as tenants by the entireties are divorced, they shall, except as otherwise provided by an order made under this chapter, thereafter hold the property as tenants in common

of equal one-half shares in value[.]").  No findings of fact or conclusions of law were included within the court's opinion.  The trial court did not address the initial issue raised by Husband alleging that the proceeds from the sale of the marital residence were held in *custodia legis*.  Moreover, the trial court failed to address Husband's contention that the court erred in directing the proceeds to be paid to third-party creditors without first determining lienholder priority where Husband contractually agreed to pay Attorney Henderson from the gross proceeds of the sale of the marital home.   Lastly, the trial court did not further elaborate on its order in a subsequent opinion.  As such, we find it necessary to remand this case to the trial court so that the court can detail its rationale for the July 19, 2022 order.

Moreover, we note that there is a potential attorney-client conflict of interest that needs to be addressed.  ***See Seifert v. Dumatic Indus. Inc.***, 197 A.2d 454, 456 (Pa. 1964) (A "conflict of interest question may be raised by the court *sua sponte*.").  Initially, Husband "suggest[s] that [his] attorney's fees should have been paid out of the gross costs of the sale before any net distribution to Husband or third-party creditors" as set forth in the parties' MSA.  Husband's Brief at 8.  However, counsel for Husband essentially concedes that payment of divorce counsel's fees from the gross proceeds of the property sale is unconventional.  ***See*** Husband's Reply Brief at 20 ("The third-party creditors should not be rewarded for their failure to properly investigate how [Husbands]'s attorney fees are to be paid or what constitutes real estate proceeds.").  Moreover, while Attorney Henderson purports to

appeal on behalf of Husband, his attorney's fees are squarely at issue. Further, as briefly alluded to earlier, Attorney Henderson argues that his attorney's fees in this matter take priority over two established lienholders.[4]

> This Court has stated:
>
> The Pennsylvania Supreme Court has repeatedly observed that the attorney-client privilege "is deeply rooted in our common law" and is "the most revered of our common law privileges." **Levy v. Senate of Pa.**, 65 A.3d 361, 368–369 (Pa. 2013) (*quoting* **Commonwealth v. Maguigan**, 511 A.2d 1327, 1333 (Pa. 1986)).
>
> Our Supreme Court has explained that "[a]t common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." **Maritrans v. Pepper Hamilton & Scheetz**, 602 A.2d 1277, 1283 (Pa. 1992).

**Dougherty v. Philadelphia Newspapers, LLC**, 85 A.3d 1082, 1086 (Pa. Super. 2014.)  An attorney's private financial interests may adversely affect the attorney's representation of his client. **See Commonwealth v. King**, 57 A.3d 607, 620 (Pa. 2012) (citations omitted).  "[A]ttorneys will not be permitted to represent conflicting interests unless those interests agree to be so represented.  The test in such cases is not the actuality of conflict but the possibility that conflict may arise." **Seifert** 197 A.2d at 455, *citing* Code of Professional Responsibility, Canon 6 ("It is unprofessional to represent

---

[4]   As set forth above, however, the total of the two liens held by Huntington Bank and Mongell is greater than Husband's share of the marital estate.  As such, determining whether, first, Attorney Henderson has a valid lien and, second, the priority of lienholders is of paramount importance.

conflicting interests, except by express consent of all concerned given after a full disclosure of the facts."). The circumstances before us raise the possibility that a conflict of interest emerged between counsel and Husband and, upon review of the record, Husband has not given his express consent to proceed after full disclosure of the potential conflict. This Court may remand the case for an evidentiary hearing on whether a potential conflict of interest exists. *See Commonwealth v. Johnson*, 472 A.2d 710, 711–712 (Pa. Super. 1984) (*per curiam*) ("If [] a potential conflict existed [], it may have permeated the entire proceedings. Therefore, given the circumstances and our inability to dispose of the issue on the record before us, we must remand for an evidentiary hearing on whether trial counsel's potential conflict of interest existed prior to the filing of the motion to withdraw."), *citing Commonwealth v. Fink*, 463 A.2d 1140, 1141 (Pa. Super. 1983).

Here, Husband's fee agreement with Attorney Henderson, as incorporated into the MSA, as well as Attorney Henderson's petition for special relief for attorney's fees, appear adverse to Husband's interests. Given the circumstances it appears that, during the course of the representation, counsel became aware of Husband's lack of funds and began to look for ways to secure payment to the detriment of Husband's creditors. When this occurred and counsel's interest in payment began to eclipse his loyalty to Husband, a potential conflict emerged and counsel needed to explain the circumstances to Husband and secure a waiver of the conflict. Because of the possibility that counsel's conflict of interest may have influenced his litigation

strategy before the trial court, the court should consider whether the potential conflict of interest bears examination before the preparation of an explanatory rationale is undertaken in this matter. At the very least, however, the trial court should inquire as to whether and/or when Attorney Henderson acquired actual or constructive knowledge of the Huntington Bank and Mongell liens and determine whether Attorney Henderson may continue representing Husband.

For all of the foregoing reasons, we vacate the order entered on July 19, 2022. Upon remand, the trial court shall first address Attorney Henderson's potential conflict of interest. If the trial court finds that Attorney Henderson may continue representing Husband, the trial court may re-enter the now-vacated order or file a new order. If the trial court finds that Attorney Henderson has a conflict of interest necessitating his removal as Husband's counsel, the court shall provide Husband the opportunity to obtain new counsel and the trial court may reconsider its order. Upon entry of a final order following any of the above scenarios, the parties may choose to file new appeals in accordance with the appellate rules, upon which the trial court shall take the steps necessary to prepare the filing of a detailed opinion as directed above.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2023